No. 24-1431

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

_____

**DALILA DEKOVIC, and
ALEJANDRO JIMENEZ RAMIREZ
Plaintiffs-Appellants**

**v.**

**ANTHONY J. BLINKEN,
U.S. Secretary of State, and
CATHERINE McGEARY,
Director, National Visa Center, U.S. Department of State**

**Defendants-Appellees**

_____

## ON APPEAL FROM A DECISION OF THE UNITED STATES DISTRICT COURT DISTRICT OF COLORADO
### 1:23-CV-02728-REB
**Robert E. Blackburn, United States District Judge**

_____

## OPENING BRIEF FOR APPELLANTS
### ~ Oral Argument Not Requested ~

_____

Mark Robert Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
MBarr@LichterImmigration.com
Counsel for Appellants

# I.    Table of Contents

I.      Table of Contents...........................................................................................ii

II.     Table of Authorities.......................................................................................iv

III.    Statement of Related Cases...........................................................................1

IV.     Jurisdictional Statement................................................................................1

    A.    The basis for the District Court's subject matter jurisdiction ...................1

    B.    The basis for the Court of Appeals' jurisdiction .......................................1

    C.    Timeliness of appeal.................................................................................1

    D.    Finality.....................................................................................................1

V.      Issues Presented for Review ..........................................................................1

    A.    For purposes of 8 U.S.C. § 1151(f)(2), what "age" is used in determining the new relationship category for the son of a newly naturalized U.S. citizen—the child's "CSPA age" or his chronological age? ......................2

    •     Raised at App. 15-17, 44-52, 54.............................................................2

    •     Ruled on at App. 169-178. ......................................................................2

VI.     Statement of the Case ....................................................................................2

    A.    Legal background .....................................................................................2

        1.    Visa petitions and immigrant visas......................................................2

        2.    The Child Status Protection Act..........................................................6

            a.    8 U.S.C. § 1153(h)(1) ....................................................................6

            b.    8 U.S.C. § 1151(f)(1) .....................................................................7

            c.    8 U.S.C. § 1151(f)(2) .....................................................................7

    B.    Statement of relevant facts.......................................................................8

    C.    Statement of procedural history ..............................................................10

    D.    Ruling presented for review ...................................................................11

        1.    Rulings not challenged on appeal......................................................11

        2.    Ruling challenged on appeal...............................................................11

VII.    Summary of the Argument ...........................................................................12

VIII.   Argument......................................................................................................12

    A.    The text, structure, purpose, and legislative history of the CSPA show that the term "age" in 8 U.S.C. § 1151(f)(2) refers to a child's CSPA age. .......................................................................................................12

        1.    Standard of review..............................................................................13

        2.    Discussion ..........................................................................................14

|  |  |  |  |
|---|---|---|---|
| | a. | Text ................................................................. | 14 |
| | b. | Statutory structure ........................................ | 16 |
| | c. | Legislative purpose ....................................... | 19 |
| | d. | Summary ........................................................ | 20 |
| IX. | | Relief Sought ....................................................... | 20 |
| X. | | District Court Decision (Issued September 30, 2024) ................ | 22 |
| XII. | | Certificate of Compliance ................................... | 40 |
| XIII. | | Statement Regarding Oral Argument ................... | 40 |
| XIV. | | Certificate of Service ........................................ | 40 |

## II.    Table of Authorities

**U.S. Code**

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1331 ...................................................................................................1

5 U.S.C. §§ 701-706 .............................................................................................1

8 U.S.C. § 1101(b)(1) .............................................................................. 14, 15, 16

8 U.S.C. § 1151(b) ...............................................................................................17

8 U.S.C. § 1151(b)(2)(A)(i) ...............................................................................3, 4

8 U.S.C. § 1151(c)(1) ...........................................................................................4

8 U.S.C. § 1151(f)(1) .............................................................................7, 15, 16, 17

8 U.S.C. § 1151(f)(2) ...................... 1, 2, 7, 13, 14, 15, 16, 17, 18, 19, 20

8 U.S.C. § 1152 .....................................................................................................4

8 U.S.C. § 1153(a) ...............................................................................................17

8 U.S.C. § 1153(a)(1) ...........................................................................................3

8 U.S.C. § 1153(a)(1-4) ........................................................................................4

8 U.S.C. § 1153(a)(2)(A) ........................................................................ 3, 14, 15

8 U.S.C. § 1153(a)(2)(B) .......................................................................................3

8 U.S.C. § 1153(e)(1) ...........................................................................................4

8 U.S.C. § 1153(h)(1) ...............................................2, 6, 9, 13, 15, 16, 17

8 U.S.C. § 1154(b) ................................................................................................3

8 U.S.C. § 1181(a) ................................................................................................3

8 U.S.C. § 1182(a) ................................................................................................3

8 U.S.C. § 1201(a)(1) .........................................................................................3, 6

8 U.S.C. § 1202(a) ................................................................................................3

8 U.S.C. § 1255(i)(2)(B) ........................................................................................4

**Federal Regulations**

22 C.F.R. § 42.51(b) .............................................................................................4

22 C.F.R. § 42.53(a) .............................................................................................4

22 C.F.R. § 42.54(a)(1) .........................................................................................5

8 C.F.R. § 204.1(b) ...............................................................................................4

8 C.F.R. § 204.2(d)(3) .......................................................................................3, 5

**Federal Court Decisions**

*Cuthill v. Blinken*, 990 F.3d 272 (2nd Cir. 2021) ....................12, 13, 15, 16, 17, 18, 19, 20

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 565 (1982)........................................16

*King v. Burwell*, 576 U.S. 473 (2015) ..................................................................16

*Kucana v. Holder*, 558 U.S. 233 (2010) ...........................................................14

*Maldonado v. City of Altus*, 433 F.3d 1294 (10th Cir. 2006) ................14

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ................................................16

*Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2005)................19

*Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014) .............................3, 4

*Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018) ...............................6, 12, 16, 19

**Federal Rules**

Fed. R. App. P. 4(a)(1)(B)(iii) ...............................................................................1

Fed. R. Civ. P. 56(c)....................................................................................................14

**Acts of Congress**

Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2022) ........................6

### III.    Statement of Related Cases

There are no prior or related appeals.

### IV.    Jurisdictional Statement

#### A.    The basis for the District Court's subject matter jurisdiction

The District Court had jurisdiction over this matter as a federal question, under 28 U.S.C. § 1331, in combination with the Administrative Procedures Act, 5 U.S.C. §§ 701-706, which allows for the review of final agency actions.

#### B.    The basis for the Court of Appeals' jurisdiction

The Court of Appeals has jurisdiction to review the final decision of the District Court pursuant to 28 U.S.C. § 1291.

#### C.    Timeliness of appeal

Because an officer of the United States was a party below, the deadline for seeking appeal was 60 days. Fed. R. App. P. 4(a)(1)(B)(iii). The District Court decision was issued September 30, 2024. Ms. Dekovic and her son filed a timely notice of appeal 30 days later, on October 30, 2024. App. at 172.

#### D.    Finality

This appeal is from a final order that disposes of all parties' claims.

### V.    Issues Presented for Review

One section of the Child Status Protection Act, codified at 8 U.S.C. § 1151(f)(2), says that where a lawful permanent resident files a visa petition in the F2A preference category for her unmarried, minor child, and the petitioner later

naturalizes, the determination of whether the child is to be re-classified as an immediate relative is made using the "**age of the [child] on the date of the parent's naturalization**."

Another section of the Child Status Protection Act, codified at 8 U.S.C. § 1153(h)(1) ("Rules for determining whether certain aliens are children"), states that an F2A beneficiary's age for immigrating is calculated by taking his chronological age on the date when an immigrant visa is first available, and then subtracting the amount of time his parent's visa petition was pending before the agency. This is referred to as the "CSPA age."

The sole issue on appeal is thus:

A.     **For purposes of 8 U.S.C. § 1151(f)(2), what "age" is used in determining the new relationship category for the son of a newly naturalized U.S. citizen—the child's "CSPA age" or his chronological age?**

•     **Raised at App. 15-17, 44-52, 54.**

•     **Ruled on at App. 169-178.**

VI.    **Statement of the Case**

A.     **Legal background**

1.    *Visa petitions and immigrant visas*

U.S. citizens and lawful permanent residents ("LPRs") can help their unmarried children obtain immigrant visas. How long that process might take depends on which category those sons and daughters occupy at the time they immigrate to the U.S. The different categories relevant to this case include the following:

- The minor (under 21) child of a U.S. citizen. People in this category are referred to as an "**immediate relative**." 8 U.S.C. § 1151(b)(2)(A)(i).

- The adult (over 21) son or daughter of a U.S. citizen. 8 U.S.C. § 1153(a)(1). This group is referred to as the "**F1**" preference category.

- The minor child of an LPR. 8 U.S.C. § 1153(a)(2)(A). This group is referred to as the "**F2A**" preference category.

- The adult son or daughter of an LPR. 8 U.S.C. § 1153(a)(2)(B). This group is referred to as the "**F2B**" preference category.

The visa process for people in all four categories involves two steps. In the first step, the U.S. citizen or LPR parent files a visa petition (Form I-130) with United States Citizenship & Immigration Services ("USCIS") to confirm the alleged family relationship with their child. 8 U.S.C. § 1154(a)(1)(A)(i); 8 U.S.C. § 1154(a)(1)(B)(i)(I). If USCIS recognizes the relationship, it will approve the petition in the appropriate category. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46-48 (2014) (citing 8 U.S.C. § 1154(b)). An approved petition is then forwarded to the Department of State's ("DOS") National Visa Center ("NVC"). 8 U.S.C. § 1154(b); 8 C.F.R. § 204.2(d)(3).

In the second step, the child beneficiary of an approved I-130 files an application for an immigrant visa with the Department of State, seeking confirmation that they are not subject to any grounds of inadmissibility. 8 U.S.C. § 1201(a)(1); 8 U.S.C. § 1202(a); 8 U.S.C. § 1182(a). If the visa application is approved, the child can enter the U.S., becoming an LPR. 8 U.S.C. § 1181(a).

However, the timing of the second step depends on whether a visa is immediately available to the intending immigrant child. 8 U.S.C. § 1255(i)(2)(B). Visas are *always* immediately available to children classified in the "immediate relative" category, as there is no cap on the number of visas that can be issued each year for such individuals. 8 U.S.C. § 1151(b)(2)(A)(i). Visa availability is more limited for children in the other categories—F1, F2A, and F2B—as each has an annual cap on the number of visas that can be issued. 8 U.S.C. § 1151(c)(1); 8 U.S.C. § 1152; 8 U.S.C. § 1153(a)(1-4).

Visas within each of three preference categories become available on a "first-come, first-served" basis, with a person's place in line based on the "priority date" of their approved I-130 visa petition. *Cuellar de Osorio*, 573 U.S. at 48; 22 C.F.R. § 42.53(a). The "priority date" is the date on which the I-130 was filed with USCIS. 8 U.S.C. § 1153(e)(1); 8 C.F.R. § 204.1(b).

The DOS issues a monthly Visa Bulletin that lists priority dates that have become "current" based on preference category and country of origin. A visa is immediately available to an I-130 beneficiary if their priority date is on or before the corresponding date in the bulletin. 22 C.F.R. § 42.51(b).

The demand for immigrant visas in the three preference categories frequently exceeds the number allotted by Congress. *Cuellar de Osorio*, 573 U.S. at 48. As a result, backlogs have developed in those categories. The differences in waiting times for the

three different preference categories can be quite stark. For example, in the current

Visa Bulletin, the current priority dates for Mexico are as follows:

- F1: people in this category can be approved for an immigrant visa if their priority date is prior to November 22, 2004.

- F2A: people in this category can be approved for an immigrant visa if their priority date is prior to May 15, 2021.

- F2B: people in this category can be approved for an immigrant visa if their priority date is prior to July 1, 2005.

*See* January 2025 Visa Bulletin, available at:

https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-january-2025.html.

When the DOS receives an approved I-130 visa petition, it is initially processed

at the NVC. 8 C.F.R. § 204.2(d)(3). When the priority date on an approved petition

nears "current" status, the DOS will inform the beneficiary that he can apply for a

visa. 22 C.F.R. § 42.54(a)(1). When an intending immigrant has filed his visa

application and paid the required fees, and the priority date is current, the NVC will

schedule an interview and forward the record to a U.S. embassy or consulate abroad.

8 U.S.C. § 1153.

Sometimes, a person's visa petition category changes while the I-130

beneficiary is waiting for a visa. For instance, a beneficiary can "age out" (turn 21) of

the F2A category, or the sponsoring parent can naturalize, making the beneficiary no

longer eligible for the LPR categories (F2A and F2B)." *Tovar v. Sessions*, 882 F.3d 895, 897 (9th Cir. 2018). The DOS will update the record to reflect the person's new category. 8 U.S.C. § 1201(a)(1).

### 2. *The Child Status Protection Act*

To ameliorate the often-harsh consequences for children switched from a category with a short or nonexistent line (immediate relative and F2A) to a category with a longer line (F1 and F2B), Congress passed the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2022) ("CSPA"). Three provisions of that law are of relevance to this case.

### a. 8 U.S.C. § 1153(h)(1)

First, under 8 U.S.C. § 1153(h)(1), the age of an F2A beneficiary is calculated by taking his biological age on the date when a visa first became available and then subtracting the number of days his parent's I-130 was pending. This will be referred to as the "CSPA age." The provision reads in full:

> **(h)** **Rules for determining whether certain aliens are children.**
> **(1)** **In general.** For purposes of subsections (a)(2)(A) and (d), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 101(b)(1) [8 USCS § 1101(b)(1)] shall be made using—
> (A)    the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but only if the alien has

         sought to acquire the status of an alien lawfully
         admitted for permanent residence within one year of
         such availability; reduced by

(B)    the number of days in the period during which the
         applicable petition described in paragraph (2) was
         pending.

### b.   <u>8 U.S.C. § 1151(f)(1)</u>

Second, under 8 U.S.C. § 1151(f)(1), the determination of whether a child is to

be considered an immediate relative is made by looking at "the age of the alien on the

date on which the petition is filed." The provision reads in full:

**(f)    Rules for determining whether certain aliens are immediate
      relatives.**

   **(1)   Age on petition filing date.** Except as provided in
       paragraphs (2) and (3), for purposes of subsection
       (b)(2)(A)(i), a determination of whether an alien satisfies
       the age requirement in the matter preceding subparagraph
       (A) of section 101(b)(1) [8 USCS § 1101(b)(1)] shall be
       made using the age of the alien on the date on which the
       petition is filed with the Attorney General under section
       204 [8 USCS § 1154] to classify the alien as an immediate
       relative under subsection (b)(2)(A)(i).

### c.   <u>8 U.S.C. § 1151(f)(2)</u>

Third, under 8 U.S.C. § 1151(f)(2), Congress provided a mechanism for

determining immediate relative status for those F2A beneficiaries whose parents

naturalized before their children had come to the U.S. on immigrant visas. That

provision provides that if an LPR naturalizes while his F2A child is still waiting for an

immigrant visa, whether the child will be considered an immediate relative will be determined by "the age of the alien on the date of the parent's naturalization." That provision reads in full:

> **(f)** **Rules for determining whether certain aliens are immediate relatives.**
>> **(2)** **Age on parent's naturalization date.** In the case of a petition under section 204 [8 USCS § 1154] initially filed for an alien child's classification as a family-sponsored immigrant under section 203(a)(2)(A) [8 USCS § 1153(a)(2)(A)], based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using the age of the alien on the date of the parent's naturalization.

## B.    Statement of relevant facts

The following facts in this case are not in dispute. App. at 66 (Joint Case Management Plan).

- On December 15, 2017, Dalila Dekovic, then an LPR, filed an I-130 with USCIS for her son, Alejandro Jimenez Ramirez, seeking his classification in the F2A preference category. App. at 66.

- Alejandro, born in Mexico in 1997, was then 20 years, 9 months, and 23 days old. App. at 36.

- On November 15, 2019, USCIS approved the I-130 in the F2A preference category. App. at 66.

- When the I-130 was approved on November 15, 2019, the F2A visa category for Mexico was "current." App. at 66; *see also* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-november-2019.html.

- Alejandro's "CSPA age" is calculated by taking his chronological age on the date when a visa first became available (November 15, 2019) and subtracting the number of days that his I-130 was pending. 8 U.S.C. § 1153(h)(1).

- Under that statutory formula, Alejandro's "CSPA age" is 20 years, 9 months, and 23 days. App. at 36.[1]

- Later in November 2019, USCIS forwarded the approved I-130 to the NVC. It was received at the NVC on December 5, 2019. App. at 66.

- On April 2, 2021, Ms. Dekovic naturalized, becoming a U.S. citizen. Later that month, Ms. Dekovic notified the NVC of her new citizenship status. App. at 66.

---

[1] Alejandro was 8,301 days old when a visa first became available on November 15, 2019. His I-130 was pending for 701 days. 8,301 days minus 701 days equals 7,600 days, which equals 20 years, 9 months, and 23 days. An easier way to approach Alejandro's CSPA calculation is by recognizing that because a visa became immediately available as soon as the petition was approved, his "CSPA age" must be the same as his chronological age on the day of the I-130 filing, as no time afterwards would count towards the CSPA age. The same would not be true if he needed to wait additional time beyond the I-130 approval to a date when this priority date became current.

- On May 3, 2021, the NVC changed the classification of Alejandro from the F2A preference category to the F1 preference category, as the adult, unmarried son of a U.S. citizen.

**C.    Statement of procedural history**

Ms. Dekovic and her son sued several government officials, challenging the reclassification of Alejandro from the F2A preference category to F1. App. at 163-64. They contended that he should have been reclassified, instead, as an immediate relative, given that his "CSPA age" was under 21 at the time of his mother's naturalization. App. at 164. The list of their defendants included officials from the U.S. Department of Homeland Security ("DHS") and U.S. Department of Justice ("DOJ"), as well as Anthony Blinken, the Secretary of State, and Catherine McGeary, the Director of the NVC. App. at 13-14.

Plaintiffs moved for summary judgment on the single, pure legal issue at play in the case. App. at 43-55. Defendants opposed. App. at 74-100. In a decision dated September 30, 2024, the District Court denied the motion for summary judgment, dismissed the claims against the defendants from DHS and DOJ for lack of standing, and affirmed the re-classification of Ms. Dekovic's visa petition from the F2A to the F1 preference category with respect to the defendants from the DOS. App. at 162-179.

### D.    Ruling presented for review

#### 1.    *Rulings not challenged on appeal*

The District Court made two findings in its analysis that the Appellants are not

challenging in this appeal. First, they do not take issue with the District Court's

finding that the NVC's reclassification of Alejandro from the F2A preference category

to F1 constituted a "final agency action" for purposes of judicial review. App. at 167.

Second, they do not contest the dismissal of the suit against the defendants from the

DHS and the DOJ, as it is the NVC's reclassification that is the sole "cause of the

injuries alleged." App. at 168-69.

#### 2.    *Ruling challenged on appeal*

The District Court held that use of the term "age" in 8 U.S.C. § 1151(f)(2)—

which states that that where an LPR files an I-130 in the F2A category and later

naturalizes, the determination of whether her child is to be reclassified as an

immediate relative is made using the "age of the [child] on the date of the parent's

naturalization"—refers to the child's chronological age and not his CSPA age. App. at

178. In reaching this conclusion, the District Court first found the language of the

statute plain and unambiguous. App. at 173-75. The District Court then examined the

purpose and structure of the CSPA, but ultimately concluded that those

considerations did not render the term ambiguous. App. at 175-78.

Appellants appeal this determination. Relying on decisions from the Ninth and

Second Circuits, they contend that use of the CSPA age in the § 1151(f)(2) calculation

is consistent with the overall purpose and structure of the CSPA, and that use of a child's biological age would lead to absurd results not intended by Congress. *See Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018); *Cuthill v. Blinken*, 990 F.3d 272 (2nd Cir. 2021).

## VII.   Summary of the Argument

The term "age" as used in 8 U.S.C. § 1151(f)(2) unambiguously refers to an F2A beneficiary's CSPA age, as calculated under 8 U.S.C. § 1153(h)(1). This meaning is revealed in the text of the statute and other, interlocking provisions, the overall structure of the CSPA, and its legislative purpose. The only circuit courts to have addressed this issue—the Second and Ninth—have reached the same conclusion. *See Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018); *Cuthill v. Blinken*, 990 F.3d 272 (2nd Cir. 2021).

## VIII.  Argument

### A.   The text, structure, purpose, and legislative history of the CSPA show that the term "age" in 8 U.S.C. § 1151(f)(2) refers to a child's CSPA age.

An LPR parent wishing to help her minor son become an LPR must first file an I-130 in the F2A preference category, seeking governmental recognition of the familial relationship. If her son, however, is an adult, she would file her visa petition in the F2B preference category, with a much longer waiting period for the priority date to become current. For those children recognized in the F2A category, they must immigrate to the U.S. before reaching the age of 21 to remain in the preferred category with the shorter line. *See supra*, § VI(A)(1).

The CSPA was designed to protect children from aging out due to agency delay, by requiring that any time taken by the government to process the visa petition not be included in the age calculation. So, in the instant case, because Alejandro Jimenez was under just under 21 when his mother filed a F2A petition, he remained a minor child for purposes of his future immigrant visa application even though he was nearly 23 by the time USCIS adjudicated the petition. In other words, his "CSPA age" was locked at 20 years for purposes of his immigrant visa, even though his chronological age was 22, keeping him in the more beneficial F2A category. *See* 8 U.S.C. § 1153(h)(1).

Another provision of the CSPA, 8 U.S.C. § 1151(f)(2), provides that when an F2A petitioner becomes a U.S. citizen before her son immigrates to the U.S., her child might be considered an immediate relative if his "age" is under 21 "on the date of [her] naturalization." This Court is asked to determine whether the term "age" in § 1151(f)(2) refers to a child's CSPA age, with its age-reduction calculation, or whether it refers simply to the child's chronological age. Appellants believe that the "text, structure, purpose, and legislative history of the CSPA," *Cuthill*, 990 F.3d at 274, mandates the former and urge the Court to follow the only other circuit courts to have addressed this issue.

### 1.    *Standard of review*

This Court reviews of a district court's denial of summary judgment de novo, applying the same legal standard employed by the district court. *Maldonado v. City of*

*Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### 2.    *Discussion*

#### a.    <u>Text</u>

The analysis begins with the text of the statute, which provides that where an F2A petitioner naturalizes, the determination of whether her son will be reclassified as an immediate relative is made "using the age of the alien on the date of the parent's naturalization." The term "age," stripped of its statutory context, might refer simply to the child's chronological age. However, the term exists within a statutory scheme in which age often refers not to mere chronological age, but to chronological age minus any bureaucratic delays in the processing of a visa petition. To understand the term "age" as it is used in § 1151(f)(2), one must look at the term in context and how it fits within the overall scheme of the CSPA. *See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 245 (2010) (interpreting the word "other" in a different immigration statute, and noting that it cannot be interpreted in isolation, but "must draw its meaning from its context.").

Another provision of the CSPA, 8 U.S.C. § 1153(a)(2)(A), notes that F2A visas can be issued to "children of [LPRs]." A "child" is defined at 8 U.S.C. § 1101(b)(1) as "an unmarried person under 21 years of age." But "children," in § 1153(a)(2)(A), does not refer to chronological age, but instead to the unique age-calculation of the CSPA,

in which visa petition processing times are excluded from a child's age. 8 U.S.C. §

1153(h)(1). That alternative age determination states that:

> For purposes of [§ 1153(a)(2)(A)], a determination of whether an alien
> satisfies the age requirement [in the statutory definition of 'child' at §
> 1101(b)(1)] shall be made using (A) the age of the alien on the date on
> which an immigrant visa number becomes available [ …], reduced by (B)
> the number of days during which the [F2A I-130] was pending.

8 U.S.C. § 1153(h)(1). Accordingly, the CSPA requires a different understanding of

"age" when determining whether an F2A beneficiary is a minor or an adult.

   Applying that understanding to § 1151(f)(2), the assessment of whether an F2A

child remains under 21 following the petitioner's naturalization, which is made "using

the age" of the child on the date of naturalization, must incorporate the age-reduction

methodology of § 1153(h)(1). As the Second Circuit noted, "[b]ecause § 1151(f)(2)a

refers *solely* to F2A beneficiaries, and because Congress specifically provided for a

modified age calculation for F2A beneficiaries, [ … ] the best textual reading of "the

age of the [F2A beneficiary] on the date of the parent's naturalization" is that it refers

to the F2A beneficiary's [CSPA] age on such date." *Cuthill*, 990 F.3d at 279-80.

   While bemoaning the lack of more clarity in the statute, the Second Circuit

nevertheless traced a "clear textual path" to its conclusion, noting the following

statutory links.

   1.    8 U.S.C. § 1151(f)(2) refers to "the [age] determination described in [§

         1151(f)(1)].

2.      The age determination in § 1151(f)(1) then explicitly cross-references "the age requirement in [§ 1101(b)(1)]," which refers to simple chronological age.

3.      But then § 1153(h)(1) modifies § 1101(b)(1) for F2A beneficiaries, providing that "[f]or purposes of [F2A visas], a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1)] shall be made using" the CSPA calculation, in which I-130 processing time is excluded.

*Cuthill*, 990 F.3d at 280 (citing *Tovar*, 882 F.3d at 901 ("An explicit cross-reference is unnecessary when the three provisions are so closely related and form a cohesive whole.").

### b.      <u>Statutory structure</u>

The textual analysis of the term "age" as it is used in § 1151(f)(2) is buttressed by a review of the statutory structure of the CSPA. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021) (recognizing that a review of statutory structure can help reveal the meaning of statutory terms). Any lingering ambiguity can be resolved by comparing the two possible meanings of "age" in § 1151(f)(2) and seeing which "produces a substantive effect that is compatible with the rest of the law." *Cuthill*, 990 F.3d at 281 (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)). In conducting this type of analysis, an interpretation which produces absurd results is not favored. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 565, 574 (1982) (noting that an interpretation should not be

followed which "would produce an absurd and unjust result which Congress could not have intended," especially where an alternative interpretation exists which would be "consistent with the legislative purpose").

Undertaking its analysis of the CSPA's structure, the Court in *Cuthill* identified "[t]hree core structural principles" that "permeate the CSPA and the family-based visa scheme." *Cuthill*, 990 F.3d at 281. First is the principle that "bureaucratic processing times should not count against child beneficiaries' ages." *Id.* This is true for both immediate relative children and F2A children. *Id.* (citing 8 U.S.C. §§ 1151(f)(1), 1153(h)). However, reading "age" in § 1151(f)(2) to refer to chronological age, and not CSPA age, would strip that protection from one, potentially large, subset of F2A beneficiaries. *Id.*

Second is the principle that "sons and daughters of citizens receive preference over sons and daughters of LPRs." *Id.* One way this is manifested is by not having a statutory cap on the number of visas that can be issued each year for the minor children of U.S. citizens, while the minor children of LPRs must wait in line for a visa to become available. *Id.* at 282 (comparing 8 U.S.C. § 1151(b) with 8 U.S.C. § 1153(a)). Yet an interpretation of § 1151(f)(2) that interpreted "age" as not including the age-out protection of § 1153(h)(1) would put many F2A children with newly naturalized parents in a substantially *less* preferential position compared to their F2A peers whose parents remained LPRs. *Id.*

That absurd and unjust result can be seen in Alejandro's case. Had his mother remained an LPR, he would be living in the U.S. now as an LPR. However, because his mother became a U.S. citizen, an action that one might reasonably think would improve Alejandro's lot, he is now facing a wait of approximately *two decades or more* before he can enter the U.S. in the F1 category to be reunited with his family. *See* the January 2025 Visa Bulletin, indicating that F1 beneficiaries are eligible to receive a visa if their priority date is earlier than November 22, 2004 (Alejandro's priority date is December 15, 2017).

Third is the principle that "minor children receive preference over adult sons and daughters." *Cuthill*, 990 F.3d at 281. This can be seen by the fact that "minor sons and daughters of LPRs can wait in the short F2A queue while adult sons and daughters of LPRs must instead wait in the much longer F2B queue." *Id.* at 282. However, the CSPA allows an F2B beneficiary to choose between staying in the F2B line or switching to the F1 line after his parent naturalizes. *Id.* (citing 8 U.S.C. § 1154(k)). One might think that an F2A beneficiary would receive similar or better treatment if his parent naturalized. And that would be the case if "age" in § 1151(f)(2) was interpreted as referring to the F2A's CSPA age. *Id.* Under that reading, an F2A with a CSPA age of under 21 would be shifted to the more preferential immediate relative category. *Id.* But under an interpretation of "age" as being limited to chronological age, an F2A with a CSPA age of under 21, but a chronological age of over 21, would be shifted into the profoundly backlogged F1 category. *Id.*

As the Second Circuit concluded, reading "age" in § 1151(f)(2) to refer to CSPA age is "consistent with the CSPA's overall scheme and structure." *Id.* at 283. The alternative reading, that "age" in § 1151(f)(2) refers simply to chronological age, "turns the CSPA on its head, contravenes three core features of our nation's family-based visa scheme, and yields the bizarre result of penalizing people for becoming U.S. citizens." *Id.* at 284 (citing *Tovar*, 882 F.3d at 899 (reasoning that interpreting "age" in § 1151(f)(2) as referring only to chronological age creates an "absurd result" in which "because [the F2A beneficiary]'s father became a citizen, [he] must now wait decades longer for a visa than if his father had remained an LPR")).

### c.    Legislative purpose

The textual and statutory scheme analyses above are bolstered further by a review of the CSPA's legislative history. *Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1241 (10th Cir. 2005) (reviewing "legislative history and the underlying policies of the statutory scheme" when ascertaining Congressional intent in an ambiguous statute). The Second Circuit noted that "the purpose and history of the CSPA overwhelmingly favor" an interpretation of "age" in § 1151(f)(2) that refers to CSPA age. *Cuthill*, 990 F.3d at 284. It reasoned that because Congress clearly "enacted the CSPA because it wanted to protect child beneficiaries from aging out of their age-dependent child visa," it made no sense that Congress would want to single out a subset of F2A beneficiaries "for exclusion from CSPA's anti-aging-out remedies." *Id.*

In reviewing the CSPA's history, the Second Circuit found it "hard to imagine a piece of legislation that speaks with more unmistakable clarity of purpose than the CSPA," noting that it was unanimously passed to stop children from "losing out on visas due to years-long processing delays." *Id.* The Court also recognized that there was "no indication whatsoever that Congress aimed to exclude any subset of minor beneficiaries from the CSPA's protections." *Id.* at 285.

### d.    Summary

The text, structure, and purpose of the CSPA all point in a single direction— that Congress could not have intended for F2A beneficiaries to be put in an agonizingly worse position by the naturalization of their petitioning parent. Accordingly, the phrase "the age of the alien on the date of the parent's naturalization," in 8 U.S.C. § 1151(f)(2), must be interpreted as referring to an F2A beneficiary's CSPA age rather than his chronological age.

## IX.    Relief Sought

For the foregoing reasons, Appellants respectfully ask the Court to find that Defendants erroneously recategorized Appellant Jimenez Ramirez in the F1 preference category following Appellant Dekovic's naturalization. They ask the Court to instruct the Defendants to recognize Appellant Jimenez Ramirez as an immediate relative, allowing him to proceed directly to an application for an immigrant visa.

Dated: January 6, 2025

Respectfully submitted,

s/ Mark Robert Barr
Mark Robert Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
Ph: (303) 554-8400
MBarr@LichterImmigration.com

Counsel for Appellants

## X.    District Court Decision (Issued September 30, 2024)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Case No. 23-cv-02728-REB

DALILA DEKOVIC, and
ALEJANDRO JIMENEZ RAMIREZ,

     Plaintiffs,

v.

TRACY TARANGO, Acting Director, California Service Center, U.S. Citizenship and
Immigration Services,
MERRICK GARLAND, Attorney General,
UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services,
ANTONY J. BLINKEN, Secretary of State,

     Defendants.

_____

**OPINION AND ORDER**
_____

**Blackburn, J.**

     This matter is before the court on **Plaintiff's Motion for Summary Judgment**

**on Administrative Procedure Claims and Request for Oral Argument** [#29][1] filed

November 27, 2023. The defendants filed a response [#34], and both the plaintiffs and

the defendants filed notices of supplemental authority [#35, #36].

     Dalila Dekovic filed an I-130 petition for a visa for her son, Alejandro Jimenez

Ramirez. At the time, Ms. Dekovic was a lawful permanent resident (LPR) of the United

States. The petition was approved by the U.S. Citizenship and Immigration Services

_____

[1]  "[#29]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

(USCIS). The petition and Mr. Jimenez were classified in the relatively favorable F2A

visa category. Ms. Dekovic and Mr. Jimenez awaited the availability of a visa in the

F2A category.

Before such a visa became available, Ms. Dekovic became a naturalized U.S.

citizen. As a result of that change in the status of Ms. Dekovic, the National Visa

Center (NVC) re-classified the petition and Mr. Jimenez into the significantly less

favorable F1 visa category. Ms. Dekovic and Mr. Jimenez challenge that re-

classification. The defendants contend the re-classification is required by 8 U.S.C. §

1151(f)(2). After reviewing the briefs, the record provided by the parties, and the

applicable law, I affirm the decision of the defendants.

## I. JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 (federal

question), in combination with the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 701-706 (review of final agency action).

## II. BACKGROUND

On December 15, 2017, Ms. Dekovic filed a Form I-130 Petition for Alien

Relative on behalf of her son, Mr. Jimenez. *Declaration of Maylene R. Gutierrez* [#32-1]

(Gutierrez Decl.), ¶ 6. At that time, Ms. Dekovic was an lawful permanent resident

(LPR), not a naturalized U.S. citizen. *Id.* Mr. Jimenez was 20 years old. The petition

was approved. When the petition was approved, Mr. Jimenez was classified as the

unmarried child of a LPR in the F2A visa category. *Gutierrez Decl.* [#32-1], ¶ 8.

On April 2, 2021,Ms. Dekovic became a naturalized U.S. citizen. *Declaration of*

*Rebecca M. Austin* [#32-2] (Austin Decl.), ¶ 3. On April 2, 2021, Mr. Jimenez was

2

more than 21 years old. As a result, the National Visa Center (NVC) determined Mr.
Jimenez was no longer the child of a LPR in the F2A visa category. The NVC
reclassified him as an unmarried son of a U.S. citizen in the F1 visa category. *Id.* at ¶
4. As discussed further below, the F1 visa category is significantly less favorable than
the F2A category.

The plaintiffs claim the NVC improperly reclassified Mr. Jiminez in the F1 visa
category. They claim Mr. Jimenez should have been reclassified in the IR (immediate
relatives) visa category, a category which includes unmarried children under age 21 of
U.S. citizens, when his mother became a U.S. citizen. According to the plaintiffs, the
Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927, requires that
Mr. Jimenez be classified in the IR visa category.

The plaintiffs rely on provisions of the CSPA codified at 8 U.S.C. § 1151(f)(2),
which addresses the age of a child on the date the parent of a child is naturalized as a
U.S. citizen. Under § 1151(f)(2), a petition by a LPR for a visa for a child under 21
converts to a petition to classify the child as an immediate relative when the LPR parent
becomes a naturalized as a U.S. citizen. The plaintiffs contend that, in determining the
age of a child under § 1151(f)(2), the NVA and the court must apply the age calculus
stated in § 1153(h)(1). The § 1153(h)(1) calculus determines the age of an alien using
the age of the alien on the date on which an immigrant visa number becomes available
for that alien reduced by the number of days during which the visa petition was pending.

The defendants contend the age calculus of § 1153(h)(1) is not applicable to the
visa classification of Mr. Jimenez under § 1151(f)(2). Rather, the defendants contend
the chronological age of Mr. Jimenez on the day his mother was naturalized as a U.S.

3

citizen is the relevant age for the purpose of the visa classification of Mr. Jimenez under § 1151(f)(2). As reflected in *Matter of Daniel Edgar Zamora-molina, Respondent*, 25 I. & N. Dec. 606, 607, 2011 WL 4730139 (BIA 2011), this is the stated position of the Board of Immigration Appeals.

The parties have not filed an administrative record. However, the parties have agreed on the relevant facts. *Proposed Joint Case Management Plan* [#32], p. 3. Further, attached to the Proposed Joint Case Management Plan [#32] are exhibits which document the facts to which the parties have effectively stipulated. Correctly, the parties say this case presents solely a question of law. Specifically, this case turns on the interpretation of the phrase "the age of the alien on the date of the parent's naturalization," as that phrase is used in § 1151(f)(2) and was applied to Mr. Jimenez.

### III. STANDARD OF REVIEW

The APA provides that a reviewing court shall set aside agency action if it is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action." *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (citation and internal quotation marks omitted).

> In determining whether the agency acted in an arbitrary and capricious manner, we must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment. Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

4

*Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997) (citations and internal quotation marks omitted). A reviewing court should engage in a "thorough, probing, in-depth review." *Wyoming v. United States*, 279 F.3d 1214, 1238 (10th Cir. 2002) (citation omitted). However, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Recently, the Supreme Court of the United States overruled the longstanding precedent *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984). *Chevron* concerned deference by courts to the permissible construction of a statute by an administrative agency. In *Loper Bright Enterprises, et al. v. Gina Raimondo*, ___ U.S. ___, 144 S. Ct. 244 (2024), the court overruled *Chevron* and said "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, ___, 144 S.Ct. 2244, 2273 ( 2024).

## IV. ANALYSIS

### A. FINAL AGENCY ACTION

The defendants contend the plaintiffs are not entitled to review under the Administrative Procedure Act (APA) because the plaintiffs are not challenging a final agency action. Generally, two conditions must be satisfied for an agency action to be "final." First, the action must mark the consummation of the agency's decision making process on the issue. It must not be of a tentative or interlocutory nature. Second, the action must be one by which "rights or obligations have been determined," or from

5

which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted).

According to the defendants, approval by the U.S. Citizenship and Immigration Services (USCIS) of a visa petition does not result in a visa. Rather, it results in getting a place in line to apply for a visa later. Because no visa has been issued or denied to Mr. Jimenez, the defendants argue, no agency has rendered its last word on the issue. I disagree.

As detailed below, the NVC has rendered its final decision on which visa category the petition of Ms. Dekovic and its beneficiary, Mr. Jimenez, will be placed. That decision is one which determines the rights and obligations of the parties as Ms. Dekovic and Mr. Jimenez await consideration for a visa for Mr. Jimenez. As this process currently is postured, that wait likely will continue for years. On the issue of visa classification, the decision of the NVC, a creature of the United States Department of State, is a final agency action.

### B. STANDING

The defendants argue the plaintiffs do not have standing to sue certain of the defendants. This is true, the defendants assert, because the allegations in the complaint do not show that the plaintiffs have suffered or will imminently suffer an injury in fact caused by certain of the defendants, which injury would be redressed by a favorable decision from this court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The injury claimed here is not the grant of the petition of Ms. Dekovic seeking a visa for Mr. Jimenez. As to both plaintiffs, the grant of that petition is a positive not a

6

negative. Rather, the injury at issue here is the re-classification of the application from
one visa category to another based on the fact that Ms. Dekovic became a naturalized
U.S. citizen. As described in the operative complaint, the **Second Amended
Complaint for Declaratory and Injunctive Relief** [#28] (Complaint), the USCIS
California Service Center approved the petition of Ms. Dekovic. *Complaint*, ¶ 27. While
Ms. Dekovic and Mr. Jimenez awaited the availability of a F2A visa, based on the
approved petition, Ms. Dekovic became a naturalized U.S. citizen. As a result,
according to the Complaint [#28], the Department of State and the National Visa Center
(NVC) re-classified the petition and Mr. Jimenez into the F1 visa category. *Complaint*,
¶¶ 30, 33, 36. The re-classification of the petition and Mr. Jimenez by the Department
of State and the NVC is the cause of the injuries alleged by the plaintiffs.

 Given these allegations, I find the plaintiffs do not have standing to assert their
claims against the defendants from the Department of Homeland Security. Those
defendants are Alejandro Mayorkas, Secretary of Homeland Security, Ur Mendoza
Jaddou, the Director of the USCIS, and Tracy Tarango, the Acting Director of the
USCIS California Service Center. The allegations in the Complaint give no indication
these defendants played any role in the re-classification of the petition and Mr. Jimenez
to the F1 visa category by the Department of State and the NVC. Similarly, the
plaintiffs do not have standing to assert their claims against Merrick B. Garland, the
Attorney General of the United States. The allegations in the Complaint concerning Mr.
Garland give no indication that the Attorney General or the Department of Justice
played any role in the re-classification of the petition and Mr. Jimenez to the F1 visa
category by the Department of State and the NVC. For each and all of these

7

defendants, the allegations in the complaint do not show that the plaintiffs have
suffered or will imminently suffer an injury in fact caused by these defendants. The
claims against these defendants must be dismissed for lack of standing.

On the other hand, the plaintiffs allege the National Visa Center (NVC), a
creature of the Department of State, improperly re-classified the petition and Mr.
Jimenez, causing injury to the plaintiffs. The plaintiffs have standing to assert their
claims against these defendants.

## C. STATUTORY ANALYSIS

Four types of family visas provide helpful context in this appeal:

• IR (Immediate-relative) visa: for minor (under 21) sons and daughters of
citizens.

• F1 visa: for adult (21 or over) sons and daughters of citizens.

• F2A visa: for minor (under 21) sons and daughters of LPRs.

• F2B visa: for adult (21 or over) sons and daughters of LPRs.[2]

The path to a family immigrant visa begins when a sponsoring LPR or U.S. citizen files
a petition on behalf of a foreign relative, who is termed the principal beneficiary. The
sponsor must provide USCIS with evidence showing, among other things, that the
sponsor has the necessary familial relationship with the beneficiary, and that the
sponsor has not committed any conduct disqualifying the sponsor from sponsoring an
alien for a visa. USCIS reviews the petition and, if it meets all requirements, approves
the petition. This helpful summary of the process is found in *Scialabba v. Cuellar de*

---

[2] § 1151(b)(2)(A)(i) (immediate-relative visas); § 1153(a)(1) (F1 visas); § 1153(a)(2)(A) (F2A
visas); § 1153(a)(2)(B) (F2B visas).

8

*Osorio*, 573 U.S. 41, 47–48 (2014).

In the F1, F2A, and F2B visa categories, approval of a petition results <u>not</u> in getting a visa then and there. Rather, the beneficiary of the petition gets a place in line. The law caps the number of visas issued each year in these and other family preference categories. In these visa categories, demand regularly exceeds supply. As a consequence, the beneficiary of an approved petition in the F1, F2A, and F2B visa categories is placed in a queue with others in that category. Each beneficiary in the category is assigned a "priority date" based on the date a petition was filed with USCIS. Often, these cues are years long.

In contrast, beneficiaries in the IR visa category can apply for and receive a visa as soon as a sponsoring petition is approved. Again, the IR visa category limited to minor (under 21) sons and daughters of U.S. citizens. Visas in the IR visa category are not subject to numerical caps. *Cuthill v. Blinken*, 990 F.3d 272, 274 (2nd Cir. 2021).

For the purpose of a visa application in this context, being considered to be under 21 is very important. As noted, the minor son or daughter of a U.S. citizen, the IR visa category, can obtain an immediate-relative visa shortly after the petition is approved. A minor son or daughter of a LPR can wait in the "relatively short (and sometimes nonexistent)" F2A queue. *Cuthill*, 990 F.3d at 275. Adult sons or daughters must wait in the F1 or F2B cues, which often are much longer. For example, in January 2021, the F1 visa cue was over six years long and the F2B visa cue was over five years long. *Cuthill v. Blinken*, 990 F.3d 272, 275 (2nd Cir. 2021).

When the petition of Ms. Dekovic was approved, Mr. Jimenez was classified properly as the unmarried child of a LPR in the F2A visa category. He was placed in the

9

relatively short F2A visa cue with a priority date of December 15, 2017, the date the

petition was filed. When Ms. Dekovic became a naturalized U.S. citizen on April 2,

2021, Mr. Jimenez was classified in the F1 visa category and was placed in the typically

much longer F1 cue. In this sense, the naturalization of Ms. Dekovic prejudiced Mr.

Jiminez.

Now, we enter the statutory weeds. When Ms. Dekovic became a naturalized

U.S. citizen on April 2, 2021, the provisions of § 1151(f)(2) were triggered. Section

1151(f)(1) & (2) provides:

> **(f) Rules for determining whether certain aliens are immediate relatives**
>
> **(1) Age on petition filing date**
>
> Except as provided in paragraphs (2) and (3), for purposes of subsection (b)(2)(A)(I) - [which defines the term immediate relative] -, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title - [which says "The term 'child' means an unmarried person under twenty-one years of age"] - shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 1154 of this title to classify the alien as an immediate relative under subsection (b)(2)(A)(I).
>
> **(2) Age on parent's naturalization date**
>
> In the case of a petition under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title, based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using the **age of the alien on the date of the parent's naturalization**.

8 U.S.C. § 1151(f)(1) & (2) (emphasis added). The final phrase in bold, above, is the

key phrase at issue here.

10

As noted previously, the plaintiffs contend that, in determining the "age of the

alien on the date of the parent's naturalization" under § 1151(f)(2), the age calculus

stated in § 1153(h)(1) must be applied. The § 1153(h)(1) calculus determines the age

of an alien using the age of the alien on the date on which an immigrant visa number

becomes available for that alien reduced by the number of days during which the visa

petition was pending. Section 1153(h)(1) provides:

**(h) Rules for determining whether certain aliens are children**

**(1) In general**

For purposes of subsections (a)(2)(A) and (d), a determination of whether
an alien satisfies the age requirement in the matter preceding
subparagraph (A) of section 1101(b)(1) of this title - [which says "The term
'child' means an unmarried person under twenty-one years of age"] - shall
be made using–

(A) the age of the alien on the date on which an immigrant visa number
becomes available for such alien (or, in the case of subsection (d), the
date on which an immigrant visa number became available for the alien's
parent), but only if the alien has sought to acquire the status of an alien
lawfully admitted for permanent residence within one year of such
availability;
reduced by

(B) the number of days in the period during which the applicable petition
described in paragraph (2) was pending.

Even though § 1151(f)(2) does not refer to § 1153(h)(1) as a criteria to be

considered to determine "the age of the alien on the date of the parent's naturalization,"

the plaintiffs contend the purpose and structure of the CSPA mandate such an

interpretation of § 1151(f)(2). Similarly, § 1153(h)(1) does not refer to § 1151(f)(2).

In *King v. Burwell*, 576 U.S. 473 (2015), the Supreme Court of the United

States summarized the cannons of statutory interpretation. If the statutory language is

plain, it must be enforced according to its terms. Often, the meaning or ambiguity of

11

certain words or phrases may only become evident when placed in context. When
deciding whether statutory language is plain, a court must read the words in their
context and with a view to their place in the overall statutory scheme. The duty of a
court construing a statute is "to construe statutes, not isolated provisions" of statutes.
*Id.*, p. 486 (quoting *Graham County Soil and Water Conservation Dist. v. United
States ex rel. Wilson*, 559 U.S. 280, 290 (2010)). I apply these considerations here.

The United States Courts of Appeals for the Second and Ninth Circuits have held
that the § 1153(h)(1) age calculus is applicable to the determination of the age of an
alien under § 1151(f)(2). *Cuthill v. Blinken*, 990 F.3d 272, 274 (2nd Cir. 2021); *Tovar
v. Sessions*, 882 F.3d 895, 896 (9th Cir. 2018). The plaintiffs ask this court to adopt the
rationales of *Cuthill* and *Tovar*.

After examining the text of the relevant statutory provisions, the *Cuthill* court
found "this is not a case that can be conclusively resolved on the plain text alone." *Id.*
at p. 282. The *Tovar* court found "the text of § 1151(f)(2), standing alone, does not say
which age controls . . . ." *Tovar*, 882 F.3d at 900. As a result, both courts examined
the purpose of the CSPA, the structure of the CSPA, and the interrelationship between
and among the relevant CSPA provisions. With that examination, both courts found the
§ 1153(h)(1) age calculus is applicable to the determination of the age of an alien under
§ 1151(f)(2) even though neither of these subsections say that specifically.

#### 1. Plain Language

In the CSPA, Congress provides at least two, and maybe more, methods for
modifying the chronological age of a visa applicant for certain provisions in the CSPA.
First, § 1153(h)(1) reduces the chronological age of an applicant by the number of days

12

in which the relevant petition was pending. Second, in § 1151(f)(1), Congress provided
that the relevant age determination is "made using the age of the alien on the date on
which the petition is filed." Section 1151(f)(2), the provision at issue here, is
immediately adjacent to § 1151(f)(1). In § 1151(f)(2), Congress provided another
means of determining age. Explicitly, § 1151(f)(1) provides that its alternative
calculation of age does not apply in § 1151(f)(2). Rather, § 1151(f)(2) provides a
different measure of age, "the age of the alien on the date of the parent's
naturalization." In writing the CSPA, Congress was ready, willing, and able to provide
various measures of age for various purposes.

Section 1153(h)(1) and § 1151(f)(2)(1) do not cross reference each other. Yet
these two provisions of the CSPA, and many other provisions, are so filled with cross-
references it makes one's head spin. Undoubtedly, Congress was ready, willing, and
able to provide multiple statutory cross references in the CSPA. However, it did not
cross reference § 1153(h)(1) to § 1151(f)(2) or vice versa.

Particularly in the context of the alternative age calculations provided in the
CSPA and the lack of cross referencing supporting the view of the plaintiffs, I find that
"the age of the alien on the date of the parent's naturalization" is quite plain and simple.
As Congress wrote § 1151(f)(2), it had in its drafting quiver the ready ability to refine
that age calculation in myriad ways. Instead, it chose to use the plain and simple
phrase at the end of § 1151(f)(2).

Some might say this interpretation of the final phrase of § 1151(f)(2) interprets
that phrase in isolation, as opposed to in the context of § 1151 and the CSPA generally.
When deciding whether statutory language is plain, a court must read the words in their

13

context and with a view to their place in the overall statutory scheme. The duty of a

court construing a statute is "to construe statutes, not isolated provisions" of statutes.

*Id.*, p. 486 (quoting *Graham County Soil and Water Conservation Dist. v. United*

*States ex rel. Wilson*, 559 U.S. 280, 290 (2010)). Below, I consider whether the

context of § 1151 and the context of the CSPA make this plain and simple phrase

ambiguous. In this case, I find that context does not render ambiguous the plain and

simple final phrase of § 1151(f)(2).

### 2. Context - Purpose & Structure of the CSPA

I examine this issue to ensure that, in concluding that the relevant language is

plain and simple, "I have read the [key words of § 1151(f)(2)(1)] in their context and with

a view to their place in the overall statutory scheme." *King*, 576 U.S. 486.

> The CSPA was motivated by bipartisan frustration with the fact that
> children were losing out on visas due to years-long processing delays.
> The legislation was co-sponsored by representatives of both major
> parties, passed the House of Representatives by a unanimous 416-0 vote,
> passed unanimously in the Senate Judiciary Committee after the addition
> of an amendment, passed the Senate by a unanimous voice vote, passed
> the House again by a unanimous voice vote, and signed into law by
> President George W. Bush. Senators and House members of both parties
> spoke in support of the legislation, and all of them focused on the same
> theme: Children should not lose their coveted status due to agency
> processing time.

*Cuthill v. Blinken*, 990 F.3d 272, 284 (2nd Cir. 2021). No doubt, in passing the CSPA,

Congress sought to reduce or eliminate the phenomenon of children aging out on their

coveted status as visa applicants under 21 years of age.

Having found that the meaning of the final phrase of § 1151(f)(2)(1) cannot be

determined "on plain text alone," the *Cuthill* court examined the context of the key

language and the place of that language in the overall statutory scheme. *Id.*, p. 281.

14

The *Cuthill* court provides a detailed and understandable description of the

interrelationship between various CSPA sections, including § 1151(f)(2)(1), related to

beneficiaries, like Mr. Jimenez, who are classified as the unmarried child of a LPR in

the F2A visa category whose status later changes when the parent of the beneficiary Iis

naturalized as a U.S. citizen. *Cuthill*, 990 F.3d at 279-281. Ultimately, the *Cuthill* court

found "while no one will ever accuse the CSPA of being reader-friendly, there is still a

clear textual path — albeit a circuitous one — leading from § 1151(f)(2) to

§ 1153(h)(1)." *Id*. at 280.

The *Cuthill* opinion provides a detailed and understandable description of the

scheme, structure, and purposes of the CSPA. *Id*. at 281-285. The court found

> (t)hree core structural principles permeate the CSPA and the family-based
> visa scheme: (1) bureaucratic processing time should not count against
> child beneficiaries' ages; (2) sons and daughters of citizens receive
> preference over sons and daughters of LPRs; and (3) minor children
> receive preference over adult sons and daughters.

*Id*. at 281. Based on its conclusion that the meaning of the final phrase of

§ 1151(f)(2) cannot be determined on the plain text alone, the *Cuthill* court assessed

the context of the language and its place in the overall statutory scheme. Ultimately,

the *Cuthill* court held that "§ 1151(f)(2) incorporates the basic age-reduction formula -

*i.e.*, the notion that you take the beneficiary's current age and deduct processing time."

*Id*. at 281. The *Cuthill* court held § 1151(f)(2) incorporates the age reduction formula

of § 1153(h)(1). "It is this concept that § 1151(f)(2) incorporates when it refers to the

age of an F2A beneficiary." *Id*. at 283. This reading of § 1151(f)(2), the court found, is

"more consistent with the CSPA's overall scheme and structure than the alternative

proposed by the government." The alternative reading, the court concluded, "turns the

15

CSPA on its head, contravenes three core features of our nation's family based visa scheme, and yields the bizarre result of penalizing people for becoming U.S. citizens." *Id*. 283-284.[3]

I appreciate the detailed analyses of both the *Cuthill* and *Tovar* courts but, respectfully, I must disagree. Even in the context of the purpose, structure, and general principles of the CSPA, which were well described in *Cuthill* and *Tovar*, the plain and simple phrase "using the age of the alien on the date of the parent's naturalization" is not rendered ambiguous. The context of § 1151 and the CSPA shows Congress chose to provide various measures of age for certain provisions of the CSPA, including a measure of age specific to § 1151(f)(2). The context of § 1151 and the CSPA shows Congress chose to provide myriad cross-references in the CSPA but chose not to cross reference between § 1153(h)(1) and § 1151(f)(2)(1). These facts are telling.

No doubt, the *Cuthill* court was correct that the CSPA reflects certain general principles and goals, such as: "(1) bureaucratic processing time should not count against child beneficiaries' ages; (2) sons and daughters of citizens receive preference over sons and daughters of LPRs; and (3) minor children receive preference over adult sons and daughters." *Cuthill*, 990 F.3d at 281. In some notable ways, application of the plain language of the final phrase of § 1151(f)(2) is contrary to these general principles and goals. Yet the CSPA is filled with varied categories of petitioners and applicants who, depending on a variety of different circumstances, receive significantly

---

[3] The plaintiffs claim the holding in *Tovar* is binding on the defendants because the petition of Ms. Dekovic was approved by the USCIS California Service Center, which is located within the ninth circuit. I disagree. The re-classification challenged by the plaintiffs was done by the NVC, a creature of the Department of State. According to the complaint, both of those entities are located in Washington D.C.

16

different treatment.  Particularly in the context of the detailed CSPA, I find it improper to impose a judicial interpretation of the plain and simple final phrase of § 1151(f)(2), thus changing the meaning of that plain and simple phrase.  Rather, I find that this plain and simple statutory language, considered alone and in context, must be enforced according to its terms.

## V. CONCLUSION

As used in § 1151(f)(2), the phrase "the age of the alien on the date of the parent's naturalization" is plain and simple.  Considering this plain and simple statutory language in the context of § 1151 and the CSPA overall does not make this plain and simple phrase ambiguous.  This plain and simple language must be enforced according to its terms.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff's Motion for Summary Judgment on Administrative Procedure Claims and Request for Oral Argument** [#29], read as an opening brief in this appeal under the Administrative Procedure Act, is denied;

2. That under Fed. R. Civ. P. 12(b)(1), the claims of the plaintiffs against the following defendants are dismissed for lack of standing and, thus, lack of subject matter jurisdiction: Tracy Tarango, Alejandro Mayorkas, Merrick Garland, and Ur Mendoza Jaddou;

3. That the re-classification of the approved I-130 petition of Ms. Dekovic undertaken by the National Visa Center and the Department of State is affirmed;

4. That judgment shall enter in favor of the defendants and against the plaintiffs: (A) dismissing the claims against Tracy Tarango, Alejandro Mayorkas, Merrick Garland,

17

and Ur Mendoza Jaddou under Fed. R. Civ. P. 12(b)(1); and (B) affirming the re-

classification of the approved I-130 petition of Ms. Dekovic undertaken by the National

Visa Center and the Department of State;

     5. That the defendants are awarded their costs to be taxed by the clerk in the

time and manner prescribed by FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

     6.  That this case is closed.

     Dated September 30, 2024, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

18

## XII.  Certificate of Compliance

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 4,878 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond.

The digital submissions have been scanned for viruses with the most recent version of macOS Mojave operating system (version 10.14.6) and, according to the program, are free of viruses.

This submission complies with the privacy and redaction requirements of Fed. R. App. P. 25(a)(5), as well as Fed. R. Civ. P. 5.2.


s/ Mark Robert Barr
Counsel for Appellants

## XIII.  Statement Regarding Oral Argument

Appellants do not seek oral argument.

## XIV.  Certificate of Service

I hereby certify that on January 10, 2025, I electronically filed the foregoing brief with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Christina P. Greer

Department of Justice, Civil Division—OIL
PO Box 878, Ben Franklin Station
Washington, D.C. 20044-0878
christina.p.greer@usdoj.gov


s/ Mark R. Barr