No. 24-1431
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
_____

**DALILA DEKOVIC,**
**ALEJANDRO JIMENEZ RAMIREZ**
**Plaintiffs-Appellants,**

v.

**MARCO RUBIO, United States Secretary of State,**
**CATHERINE McGEARY, Director, National Visa Center, United States**
**Department of State,**
**Defendants-Appellees.**

_____

## ON APPEAL FROM THE DISTRICT OF COLORADO
## 1:23-cv-2728 (Blackburn, J.)

### DEFENDANTS-APPELLEES' ANSWERING BRIEF
_____

| | |
|---|---|
| **LINDSAY M. VICK** | **JESSICA A. DAWGERT** |
| Senior Litigation Counsel | Senior Litigation Counsel |
| Office of Immigration Litigation | Office of Immigration Litigation |
| | Civil Division |
| | U.S. Dep't of Justice |
| | P.O. Box 878, Ben Franklin Station |
| | Washington, D.C. 20044 |
| | (202) 616-9428 |

### ATTORNEYS FOR DEFENDANTS-APPELLEES

**Defendants-Appellees do not request oral argument, only the opportunity to**
**participate should the Court schedule argument.**

## <u>STATEMENT OF RELATED CASES</u>

The undersigned is not aware of any prior or related appeals.


<u>s/ Jessica A. Dawgert</u>
JESSICA A. DAWGERT
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice

# <u>TABLE OF CONTENTS</u>

STATEMENT OF RELATED CASES

GLOSSARY

FAMILY-BASED VISA PETITION CATEGORIES

STATEMENT OF JURISDICTION ...................................................................... 1

STATEMENT OF THE ISSUES ........................................................................... 2

STATEMENT OF THE CASE AND RELEVANT FACTS ................................. 3

    I.      Immigrant Visa Process ..................................................................... 3

    II.     Dekovic's Immigrant Visa Petition, Classification, and this
              Litigation .......................................................................................... 6

STANDARD OF REVIEW ................................................................................... 9

SUMMARY OF ARGUMENT ...........................................................................10

ARGUMENT.......................................................................................................11

    I.      Plaintiffs have not challenged a final agency action. .........................11

    II.     The National Visa Center properly determined that "age" in 8
              U.S.C. § 1151(f)(2) refers to biological age. ....................................14

CONCLUSION ...................................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Azadani v. Gaudiosi*,
No. 24-cv-00825, 2025 WL 35597 (D. Colo. Jan. 6, 2025)................................14

*Bennett v. Spear*,
520 U.S. 154 (1997) ....................................................................12, 14

*Burrage v. United States*,
571 U.S. 204 (2014) ............................................................................21

*Catron Cty. Bd. of Comm'rs v. U.S. Fish & Wildlife Serv.*,
75 F.3d 1429 (10th Cir. 1996) ............................................................12

*Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*,
220 F.3d 1171 (10th Cir. 2000) ..........................................................12

*Cuthill v. Blinken*,
990 F.3d 272 (2d Cir. 2021) ......................................................8, passim

*Da Silva v. Blinken*,
No. 23-612154 (S.D. Fla. Jan. 16, 2024)............................................26

*Dekovic, et al. v. Tarango et al.*,
No. 1:23-cv-2728 (D. Colo. Oct. 30, 2024)......................................... 2

*Dekovic, et al. v. Tarango, et al.*,
8:23-cv-00787 (C.D. Cal. May 15, 2023) ........................................... 7

*Encompass Ins. Co. v. Store Mansion rest. Inc.*,
902 F.3d 147 (3d Cir. 2018) ...............................................................23

*In re VIsteon Corp.*,
612 F.3d 210 (3d Cir. 2010) ...............................................................23

*Karim v. Allen*,
No. 21-cv-2861, 2023 WL 4624896 (D. Colo. July 19, 2023) ...........10

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ...........................................................................12

*Matter of Zamora-Molina*,
25 I. & N. Dec. 606 (BIA 2011) ....................................................20, 26

*Riccio v. Sentry Credit Inc.*,
   954 F.3d 582 (3d Cir. 2020) ...............................................................23

*Scialabba v. Cuellar de Osorio*,
   573 U.S. 41 (2014) ...............................................................4, passim

*Sciamarelli v. Swacina, et al.*,
   No. 1:15-cv-24288, 2016 WL 9444167 (S.D. Fla. Sept. 19, 2016) ...................26

*Tovar v. Sessions*,
   882 F.3d 895 (9th Cir. 2018) ...............................................8, passim

*United States v. Moreno*,
   727 F>3d 255 (3d CIr. 2013).................................................................23

*United States v. Romo-Romo*,
   246 F.3d 1272 (9th Cir. 2001) ...........................................................19

*Utah Animal Rights Coalition v. Salt Lake Co.*,
   566 F.3d 1236 (10th Cir. 2009) .........................................................10

**Statutes**

28 U.S.C. § 1291...........................................................................1

28 U.S.C. § 1331...........................................................................1

5 U.S.C. § 551(13) .......................................................................12

5 U.S.C. § 704 .............................................................................12

8 U.S.C. § 1151(b)(2)(A)(i) ........................................................4, 15

8 U.S.C. § 1151(c) .......................................................................3 4

8 U.S.C. § 1151(f).................................................................16, passim

8 U.S.C. § 1151(f)(1) ...........................................................16, passim

8 U.S.C. § 1151(f)(2) .............................................................2, passim

8 U.S.C. § 1151(f)(3) ...................................................................17

8 U.S.C. § 1153 .......................................................................5, 12

8 U.S.C. § 1153 (a) ...............................................................3, 4, 15

8 U.S.C. § 1153(e)(1)......................................................................5

8 U.S.C. § 1153(f)..........................................................................3

8 U.S.C. § 1153(h)...............................................................................8, 17

8 U.S.C. § 1153(h)(1)....................................................................6, passim

8 U.S.C. § 1153(h)(1)(A)...............................................................21, 23

8 U.S.C. § 1153(h)(5)............................................................................18

8 U.S.C. § 1154(a)(1)........................................................................3, 15

8 U.S.C. § 1154(b)...................................................................................3

8 U.S.C. § 1154(k)...........................................................................25, 28

8 U.S.C. § 1182(a)...................................................................................5

## Regulations

8 C.F.R. § 204.1(a)(1)......................................................................3, 14

8 C.F.R. § 204.2(d)(3)..............................................................................3

8 C.F.R. § 245.1(g)(1)..............................................................................4

8 C.F.R. § 204.2(i)(2).........................................................................4, 13

8 C.F.R. § 204.2(i)(3).........................................................................4, 13

22 C.F.R. § 42.51(b).................................................................................4

22 C.F.R. § 42.62......................................................................................5

22 C.F.R. § 40.1(*l*)(2), 42.81(a)......................................................5, 13

22 C.F.R. § 42.81(a)............................................................................5, 13

## Other

9 FAM 502-1.1(d)(2)(a)...............................................................4, 5, 14

## GLOSSARY

| Acronym | Full Term |
|---------|-----------|
| APA | Administrative Procedure Act |
| CSPA | Child Status Protection Act |
| INA | Immigration and Nationality Act |
| USCIS | United States Citizenship and Immigration Service |

## FAMILY-BASED VISA PETITION CATEGORIES

| Visa Petition Category | Beneficiaries in this Category |
|------------------------|--------------------------------|
| Immediate Relative (IR) *8 U.S.C. § 1151(b)(2)(A)(i)* | children (unmarried and under 21 years old), parents, and spouses of U.S. citizens |
| F1 *8 U.S.C. § 1153(a)(1)* | unmarried, adult (21 or older) sons and daughters of U.S. citizens |
| F2A *8 U.S.C. § 1153(a)(2)(A)* | spouses and children (unmarried and under 21 years old) of lawful permanent residents |
| F2B *8 U.S.C. § 1153(a)(2)(B)* | unmarried, adult (21 or older) sons and daughters of lawful permanent residents |
| F3 8 U.S.C.A. § 1153(a)(3) | married sons and daughters of U.S. citizens |
| F4 *8 U.S.C. § 1153(a)(4)* | brothers and sisters of U.S. citizens |

No. 24-1431

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**DALILA DEKOVIC,**
**ALEJANDRO JIMENEZ RAMIREZ**

**Plaintiffs-Appellants,**

v.

**MARCO RUBIO, United States Secretary of State,**
**CATHERINE McGEARY, Director, National Visa Center, United States Department of State,**

**Defendants-Appellees.**[1]

## DEFENDANTS-APPELLEES' ANSWERING BRIEF

### STATEMENT OF JURISDICTION

In this immigration case brought under the Administrative Procedure Act (APA), Plaintiffs-Appellants Dalila Dekovic and her son Alejandro Jimenez Ramirez appeal from a September 30, 2024 final judgement from the United States District Court for the District of Colorado. The district court had jurisdiction under

---

[1] Plaintiffs brought this case against several defendants, including officials from the Department of Homeland Security and the Attorney General. App. 8-9, 13-14. However, the district court determined that Plaintiffs did not have standing to bring their claims against these defendants, App. 167-69, 178-79, and Plaintiffs have affirmatively waived any challenge to that determination, Pl. Br. 11. The caption has also been updated to reflect the new Secretary of State and Director of the National Visa Center.

28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The appeal is timely because it was filed on October 30, 2024, within thirty days of the district court's opinion and order. *See Dekovic, et al. v. Tarango et al.*, No. 1:23-cv-2728 (D. Colo. Oct. 30, 2024) (notice of appeal); App., ECF No. 13, p.2 (district court docket sheet).

## STATEMENT OF THE ISSUES

I.   Whether the district court erred in concluding that the National Visa Center's classification determination was a final action for APA review when Jimenez's visa application remains pending. App. 86–88 (Defendants' motion for summary judgment), 166–67 (district court opinion).

II.  Whether the district court properly determined that the National Visa Center's classification was correct because the term "age" in 8 U.S.C. § 1151(f)(2)—a provision regarding whether an alien is an immediate relative of a U.S. citizen—means chronological age and not a different age calculation found in a separate statutory provision that is not cross-referenced in § 1151(f)(2). App. 88–97 (Defendants' motion for summary judgment), 169–78 (district court opinion).

## STATEMENT OF THE CASE AND RELEVANT FACTS

### I.    Immigrant Visa Process

When an alien seeks to obtain an immigrant visa on the basis of a family relationship with a U.S. citizen or lawful permanent resident, *see* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a), the U.S. citizen or lawful permanent resident must first file a Form I-130, Petition for Alien Relative, with the Department of Homeland Security, United States Citizenship and Immigration Service (USCIS) to confirm that the beneficiary has a qualifying relationship with the petitioning family member. *See* 8 U.S.C. §§ 1153(a), 1153(f), 1154(a)(1); *see also* 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). That relationship places the beneficiary in one of several categories. Specifically, the Immigration and Nationality Act (INA) allocates a specific number of family-based immigrant visas each year, distributed among five different categories. *See* 8 U.S.C. § 1151(c). The five family-preference visa categories are:

F1:  the unmarried, adult (21 or older) sons and daughters of U.S. citizens;

F2A: the spouses and children (unmarried and under 21 years old) of lawful
permanent residents ("LPRs");

F2B: the unmarried, adult (21 or older) sons and daughters of LPRs;

F3:  the married sons and daughters of U.S. citizens;

F4:  the brothers and sisters of U.S. citizens.

8 U.S.C. §§ 1153(a)(1)-(4). In addition to these family-preference categories, the INA provides an unlimited number of immediate relative visas to beneficiaries who are children (*i.e.*, unmarried and under twenty-one years old), spouses, and parents of U.S. citizens. 8 U.S.C. § 1151(b)(2)(A)(i). Although a sponsoring lawful permanent resident or U.S. citizen can file an immigrant visa petition for a beneficiary at any time, Congress imposes annual limits on the number of available visas for the family preference categories, 8 U.S.C. §§ 1151(c)(1), 1152, 1153(a)(1)–(4), and demand frequently exceeds the congressionally established number of available visas. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014).

The Form I-130 visa petition is first received by DHS's United States Citizenship and Immigration Services (USCIS). If USCIS determines the claimed family relationship exists, it should approve the petition and assign an immediate relative or preference-category classification. *See* 8 U.S.C. § 1154(b); *Cuellar de Osorio*, 573 U.S. at 46–48 (2014) (citing 8 U.S.C. § 1154(b)). If the beneficiary is not in the United States upon approval, USCIS sends the petition to the National Visa Center for pre-processing of the visa. *See* 8 C.F.R. § 204.2(d)(3).

The approved petition is given a priority date—i.e., the date the petition was properly filed with USCIS—establishing a place in the "first-come, first-served"

line.[2] *Id.*; 8 U.S.C. § 1153(e)(1). Classification in one of these categories is not permanent; as circumstances such as age and marital status change, a beneficiary's family preference category will convert to account for those changes. *See* 8 C.F.R. §§ 204.2(i)(2) and (3) (discussing "automatic conversion of preference classification"); *see also* 9 FAM 502.1-1(D)(2)(a) ("As part of pre-processing, staff at the National Visa Center (NVC) make preliminary CSPA determinations and visa classifications; however, [consular officers] are responsible for making the final CSPA determination and identifying the correct visa classification when adjudicating visa applications.").

Only when the priority date is current, the beneficiary has submitted the required documents, and paid the necessary fees, does USCIS adjudicate the application to adjust status or the National Visa Center determine the case to be "documentarily complete" and schedule an in-person interview and transfer the case to an embassy or consulate abroad (depending on whether the beneficiary is inside or outside the United States). 8 U.S.C. § 1153. For visa applicants outside the United

---

[2] The Department of State publishes a monthly visa bulletin indicating the priority dates that are current within each preference category. *See* 8 C.F.R. § 245.1(g)(1); 22 C.F.R. § 42.51(b). Some beneficiaries may wait years before a visa number in a given preference category becomes "current" or available. *See* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html; *Cuellar de Osorio*, 573 U.S. at 50.

States, after the case is sent to the embassy or consulate, the beneficiary must appear before a consular officer abroad to execute a visa application and be interviewed. 22 C.F.R. § 42.62. An applicant bears the burden of establishing eligibility for a visa at the time of adjudication. *Cuellar de Osorio*, 573 U.S. at 50–51. When a visa application has been properly completed and executed before a consular officer, the consular officer must either issue or refuse the visa under 8 U.S.C. § 1182(a) or § 1201(g), or other applicable law. *See generally* 22 C.F.R. §§ 40.1(*l*)(2), 42.81(a).

## II.   Dekovic's Immigrant Visa Petition, Classification, and this Litigation

On December 15, 2017, USCIS received a Form I-130 visa petition filed by Dekovic, then a lawful permanent resident. App. 34, 66. The petition sought to classify her son, Jimenez, as her child under the F2A visa category (a lawful permanent resident's unmarried child under 21 years of age). App. 34, 66. At that time, Jimenez was approximately two months shy of his twenty-first birthday. App. 9, 36, 38, 57 (establishing that Jimenez was 20 years, nine months, and 23 days old at the time USCIS received the Form I-130 visa petition). On November 15, 2019, USCIS approved the Form I-130 petition, establishing Jimenez as an F2A beneficiary because he was the child of a lawful permanent resident.[3] USCIS

---

[3] Although he had turned twenty-one years old in 2018, Jimenez was still classified as an F2A beneficiary under the age calculation in 8 U.S.C. § 1153(h)(1) because his mother was a lawful permanent resident at that time.

forwarded the Form I-130 petition to the National Visa Center for further processing. App. 70. At that time, the F2A visa category was "current," so the National Visa Center began pre-processing the case by collecting documents and fees.[4] *See* App. 40.

On April 2, 2021, Dekovic naturalized to become a United States citizen. App. 71, 73. Through counsel, Dekovic notified the National Visa Center, which, on May 3, 2021 re-classified Jimenez as an F1 unmarried son (21 or older) of a U.S. citizen. App. 73.

After learning of the re-classification, Plaintiffs sought new legal advice, App. 21-24, and, ultimately filed a complaint in the United States District Court for the Central District of California. *See Dekovic, et al. v. Tarango, et al.*, 8:23-cv-00787 (C.D. Cal. May 15, 2023). The parties filed a joint stipulation to transfer the case to the United States District Court for the District of Colorado, as Dekovic is a resident in that district. *See id.*, ECF No. 16; App. 3 (noting case transferred on Oct. 19, 2023). After Plaintiffs filed a second amended complaint, App. 8-17, the parties agreed that the only issue(s) in this case are legal, and stipulated to the relevant facts. App. 65–67.

---

[4] Although the F2A petition was current for quite a while prior to Dekovic's naturalization in April 2021, Jimenez's visa application was not documentarily ready—and thus could not be scheduled for processing—until January 8, 2021.

Plaintiffs moved for summary judgment, arguing that the National Visa Center erred in re-classifying Jimenez as an F1 beneficiary when he should, under case law from the Second and Ninth Circuits, be classified as an immediate relative. App. 43–55. Defendants opposed, arguing (1) there is no final agency action for purposes of the APA; (2) the plain language of the INA establishes that the National Visa Center's classification was correct; and (3) Plaintiffs identified incorrect defendants in this matter. App. 75–100.

On September 30, 2024, the district court denied Plaintiffs' motion for summary judgment. App. 162–81. First, the district court concluded that the National Visa Center's re-classification of Jimenez as an F1 beneficiary was a final agency action because it was one that determines the rights and obligations of the parties. App. 166–67. Second, the district court ruled that Plaintiffs did not have standing to assert their claims against the Department of Homeland Security officials and the Attorney General because those Defendants did not play any role in the re-classification of the visa petition. App. 167–69. However, the district court did find that the National Visa Center, "a creature of the Department of State," was responsible for the classification at issue in this case and thus the Plaintiffs had standing to assert their claims against the State Department defendants. App. 169.

Regarding the merits of Plaintiffs' statutory claims, the district court determined that, under the plain language of the statute, the National Visa Center

properly classified Jimenez as an F1 beneficiary. App. 169-82. The district court considered both the plain text of the statute as well as the overall statutory scheme, and ultimately disagreed with the Second Circuit in *Cuthill v. Blinken*, 990 F.3d 272 (2d Cir. 2021), and the Ninth Circuit in *Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018). In particular, the district court recognized that the Child Status Protection Act (CSPA) had "various measures of age for various purposes." App. 174. And the particular section at issue for Jimenez, 8 U.S.C. § 1151(f)(2), did not cross-reference the section that contained the age calculation relied upon by Plaintiffs (8 U.S.C. § 1153(h)). App. 174. Thus, Congress clearly intended not to use that age calculation but instead use the "plain and simple phrase" referencing "the age of the alien on the date of the parent's naturalization." App. 174.

The district court further explained that the context of the CSPA did not render the statutory language ambiguous or otherwise require use of the separate age calculation in § 1153(h)(1). App. 177 ("The context of § 1151 and the CSPA shows Congress chose to provide myriad cross-references in the CSPA but chose not to cross reference between § 1153(h)(1) and § 1151(f)(2)[]. These facts are telling."). Accordingly, the district court held that the National Visa Center properly re-classified Jimenez as an F1 beneficiary (the unmarried son 21 or older of a U.S. citizen) and not an immediate relative (unmarried child under 21 of a U.S. citizen). App. 178. This appeal followed.

## STANDARD OF REVIEW

This Court reviews a summary judgment decision de novo, "applying the same legal standard as the district court." *Utah Animal Rights Coalition v. Salt Lake Co.*, 566 F.3d 1236, 1242 (10th Cir. 2009) (internal marks and citation omitted). Here, the district court was authorized to grant summary judgment when there was no genuine issue as to any material fact and the movant demonstrated that they were entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Indeed, all facts in this case are agreed upon, thus the district court was charged with considering "arguments about the legal conclusions to be drawn about the agency action." *Karim v. Allen*, No. 21-cv-2861, 2023 WL 4624896, *1 (D. Colo. July 19, 2023).

## SUMMARY OF ARGUMENT

The Court should both reverse and uphold the district court's opinion. First, the Court should reverse the district court's determination that the National Visa Center's re-classification determination regarding Jimenez's visa preference category is a final agency action. Critically, for beneficiaries outside the United States, only consular officers may determine the final visa classification and issue or refuse the visa application. Indeed, visa classification determinations do not provide beneficiaries an immigrant visa, they only dictate what category the beneficiary would be in if the immigrant visa application was to be adjudicated at that time and

an immigrant visa number issued. Because the classification determination here did not end the visa application process, it is not a final agency action.

Second, and only if the Court does not agree with Defendants on whether there is a final agency action to review, the Court should uphold the district court's determination that Jimenez was properly categorized as an F1 beneficiary. While the CSPA provided a complicated set of statutory provisions that include various calculations and relief for beneficiaries who faced a longer wait time for an available immigrant visa due to administrative processing delays, the specific issue in this case is simple: the statute requires an adjudicator to look to the "age on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2). And although "age" is not defined in that section, there is no indication it references anything other than the beneficiary's chronological age. In fact, the section specifically does not cross-reference the age calculation Plaintiffs wish to apply here—a material fact because the statute does cross-reference other statutory provisions. Furthermore, placed in context, the Court should determine that § 1151(f)(2) provides a different age consideration from that in § 1153(h)(1). Although this results in a longer wait for Jimenez to finalize his visa application, any other reading is results-driven and contrary to the clear statutory text. Accordingly, the Court should uphold the district court's determination that "age" in § 1151(f)(2) refers to a beneficiary's chronological age.

# ARGUMENT

## I.    Plaintiffs have not challenged a final agency action.

As a threshold matter, this Court should reverse the district court's determination that Plaintiffs have challenged a final agency action. App. 166–67. The APA allows for review of "final agency action for which there is no other adequate remedy in a court." The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Plaintiffs have the burden of identifying specific federal conduct and explaining how it constitutes a "final agency action" within the meaning of § 551(13). *See Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)); *Catron Cty. Bd. of Comm'rs v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1434 (10th Cir. 1996); *see also* 5 U.S.C. § 704. For an agency action to be final, the action must (1) "mark the consummation of the agency's decision making process," meaning it is not "tentative or interlocutory," and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted).

Here, the district court reasoned that the National Visa Center's re-classification of Jimenez's petition was a final action because it is one which determines the rights and obligations of the parties. App. at 166–67. Plaintiffs

affirmatively do not "challenge" this determination, Pl. Br. at 11. However, they also do not defend the district court's decision on finality. *See generally* Pl. Br. But even if Plaintiffs had attempted to defend the district court's decision, this Court should find that the district court erred. While it is true that the classification had legal implications such that Jimenez must wait longer for an interview to execute a visa application before a consular officer because an immigrant visa is not currently available for F1 beneficiaries from Mexico, the classification was not a final decision. App. 167 (stating that the National Visa Center had "rendered its final decision on which visa category the petition of Ms. Dekovic and its beneficiary, Mr. Jimenez, will be placed.").

Critically, an immigrant visa petition classification can change as circumstances change. 8 U.S.C. § 1153; 8 C.F.R. §§ 204.2(i)(2), (3) (providing for automatic conversions from one category to another upon either passing a twenty-first birthday or a parent's naturalization); *Cuellar de Osorio*, 573 U.S. at 50–51. While Jimenez's current visa category is likely the ultimate category for him because of personal circumstances (Dekovic has obtained the most durable immigration status (citizen) and Jiminez has already reached adulthood under the immigration laws), not all classification determinations have such finality. Indeed, Jimenez's prior inclusion in the F2A category was not his "final" classification, nor has anyone argued that the F2A classification constituted the "final agency action" in this case.

And perhaps more importantly, the final visa classification determination will not occur until Jimenez appears before a consular officer and executes a visa application. *See generally* 22 C.F.R. §§ 40.1(*l*)(2), 42.81(a); *see also* 9 FAM 502.1-1(D)(2)(a). Ultimately, because the visa application process continues after the National Visa Center's preliminary classification determination, that determination should not be considered a final agency action. *Cuellar de Osorio*, 573 U.S. at 47 (noting that the visa petition approval does not result "in getting a visa" "but only in getting a place in line."); *id.* at 48–49 (discussing requirements for the visa application, which is separate from the visa petition establishing the relationship and preference category); *Bennett*, 520 U.S. at 177–78; 9 FAM 502.1-1(D)(2)(a) ("As part of pre-processing, staff at the National Visa Center (NVC) make *preliminary* CSPA determinations and visa classifications; however, you [the consular officer] are responsible for making the *final* CSPA determination and identifying the correct visa classification when adjudicating visa applications."); *see also Azadani v. Gaudiosi*, No. 24-cv-00825, 2025 WL 35597 (D. Colo. Jan. 6, 2025) (holding that the doctrine of consular nonreviewability was not invoked because the State Department's placing of an application "in administrative processing . . . necessarily involves additional consideration and a subsequent final decision.") (marks and citation omitted).

## II.    The National Visa Center properly determined that "age" in 8 U.S.C. § 1151(f)(2) refers to biological age.

Should the Court determine there is a final action to review, it should uphold the district court's determination that the National Visa Center's re-classification of Jimenez as an F1 beneficiary was correct. App. 170-78. Critically, the plain language of the INA requires this result and the Court should reject Plaintiffs' request for this Court to adopt an erroneous and expansive reading of the CSPA.

As discussed above, an applicant for a family-based immigrant visa must have an approved Form I-130 visa petition documenting the requisite relationship and there must be an available immigrant visa. 8 U.S.C. §§ 1153(a), 1153(f), 1154(a)(1); *see also* 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). When adjudicating the application, the adjudicator must look to whether the applicant meets the eligibility requirements at the time of adjudication; it is not sufficient if the requirements were only met at the time of filing the visa petition. *Cuellar de Osorio*, 573 U.S. at 50–51.

Because the categories for sons and daughters twenty-one or older typically have a much longer wait for an available visa than the categories for children (unmarried and under the age of twenty-one), Congress enacted the CSPA to provide limited relief for beneficiaries who faced a longer wait for an immigrant visa because they turned twenty-one during petition processing. CSPA, Pub. L. No. 107-208, 116 Stat. 927 (Aug. 6, 2002); *see Cuellar de Osorio*, 573 U.S. at 51 (recognizing that the

CSPA is limited in application). The CSPA contained many different pieces, but there are two relevant sections of the CSPA at issue in this case.

First, section two of the CSPA addressed "the 'aging out' problem for the offspring of *U.S. citizens* seeking to immigrate as 'immediate relatives.'" *Cuellar de Osorio*, 573 U.S. at 51 (emphasis added); *see* CSPA § 2 (amending 8 U.S.C. § 1151(f)). As noted *supra* in describing the various family preference categories, children (unmarried and under the age of twenty-one) whose petitioning parents are U.S. citizens are categorized as "immediate relatives" and there is no annual numerical limit on the availability of these visas. *See Cuellar de Osorio*, 573 U.S. at 50–51. Before the CSPA, such beneficiaries of immigrant visa petitions filed prior to turning twenty-one years old and who turned twenty-one years old while waiting for the adjudication of the immigrant visa petition lost access to this numerically unlimited and immediately available visa, as they became a son or daughter (twenty-one or older) and were placed in the F1 or F3 preference category (depending on whether the beneficiary was married). *Cuellar de Osorio*, 573 U.S. at 50–51. And because the beneficiaries were no longer considered "immediate relatives," those beneficiaries were subject to a further wait for an available visa. *Id.* at 51.

To provide some relief for the hardship caused by petition processing delays for offspring of citizens, the CSPA allowed the beneficiary to use his or her age on the date on which the immediate relative visa petition was filed instead of

considering the beneficiary's age at the time of adjudication. 8 U.S.C. § 1151(f)(1). As the Supreme Court described, "[i]f an alien was young when a U.S. citizen sponsored his entry, then Peter Pan-like, he remains young throughout the immigration process." *Cuellar de Osorio*, 573 U.S. at 51. Congress enumerated two exceptions to this rule: §§ 1151(f)(2) and (3). Specifically, (f)(2) provides that when the petitioner is a parent who naturalized, the adjudicator must look to "*the age of the alien on the date of the parent's naturalization*," 8 U.S.C. § 1151(f)(2) (emphasis added); and (f)(3) provides that when the offspring was initially married (and thus was not an unmarried minor) and the marriage was later terminated, "the age of the alien on the date of the termination of the marriage" is the relevant date for determining whether the alien was under twenty-one and thus eligible for an immediate relative visa, 8 U.S.C. § 1151(f)(3).

The second relevant section of the CSPA is section three, which provided relief for certain aged-out alien offspring of *lawful permanent residents*, as well as any derivative beneficiaries those offspring may have. *See* CSPA § 3 ("Treatment of certain unmarried sons and daughters seeking status as family-sponsored, employment-based, and diversity immigrants"); 8 U.S.C. § 1153(h)). This relief established a calculation that is both more complicated and more limited than the age considerations the CSPA provided for offspring of U.S. citizens. Specifically, 8 U.S.C. § 1153(h)(1) includes two components: an age calculation that is made by

17

reducing "the age of the alien on the date on which an immigrant visa number becomes available for such alien" by "the number of days in the period during which the applicable [visa] petition was pending [adjudication]"; and a requirement that the alien seek to acquire permanent resident status "within one year of such [visa] availability." *Cuellar de Osorio*, 573 U.S. at 52–53; *see* 8 U.S.C. §§ 1153(h)(1), (5). Practically speaking, instead of locking the beneficiary's age in as of a certain date, it reduced the beneficiary's age on the date the visa became available by the amount of time the visa petition was pending adjudication, so long as the beneficiary timely sought to acquire lawful permanent resident status within one year after the visa became available.

There is no debate that § 1151(f)(2) controls Jimenez's preference classification because his petitioning mother naturalized to become a U.S. citizen after the immigrant visa petition had been filed. *See* Pl. Br. 11, App. 70–71, 73. The question presented to this Court is whether the term "age" in § 1151(f)(2) refers to Jimenez's chronological age at the time his mother naturalized, or whether the Court should import the age calculation used for the offspring of lawful permanent resident parents from § 1153(h). The district court correctly determined that the plain language of § 1151(f)(2) references the beneficiary's chronological age.

Most critically, nothing in § 1151(f) references the age calculation found in the separate § 1153(h), which applies to offspring of lawful permanent residents, not

U.S. citizens. Rather, § 1151(f) generally allows a visa applicant to use his or her age on the date on which the visa petition was filed. 8 U.S.C. § 1151(f)(1). And where a visa applicant seeks classification as an immediate relative after a parent's naturalization, the statute dictates that an applicant's eligibility "shall be made using the age of the alien on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2). Read in context, the word "age" in 8 U.S.C. § 1151(f) retains its ordinary meaning of chronological age.

Indeed, for offspring of U.S. citizen petitioners, Congress chose different moments at which to lock in that age, depending on the circumstances:  the date of the original visa petition for children whose parents were citizens at the time they filed the visa petition, *see* 8 U.S.C. § 1151(f)(1), or the date of the petitioning parent's naturalization for children whose parents were lawful permanent residents at the time they filed the visa petition, *see* 8 U.S.C. § 1151(f)(2). Here, because Dekovic naturalized, the key fact was Jimenez's age at the time of his mother's naturalization in April 2021: twenty-four years old. *See* App. 9 (Second Amended Complaint, asserting that Jimenez was twenty years, nine months, and twenty-three-days old on December 15, 2017, which means he turned twenty-one in February 2018). Under the plain language of the statute, then, his "age" was over twenty-one, and, therefore, he cannot be classified as an immediate relative.

Plaintiffs seek a different result based on an argument that the age calculation in § 1153(h)(1) (for offspring of lawful permanent residents) should carry over and be imported into the § 1151(f)(2) analysis. Pl. Br. 11-20. But 8 U.S.C. § 1153(h)(1) on its face does not apply to the age calculation for immediate relative visas. Rather, the provision explicitly applies to determine whether an individual should be classified as an F2A or can proceed as a derivative beneficiary, and nothing in the statute suggests that this specific calculation should be employed elsewhere. *See Matter of Zamora-Molina*, 25 I. & N. Dec. 606, 611 (BIA 2011) (noting that § 1151(f)(2) does not reference the calculation in § 1153(h)(1)); *United States v. Romo-Romo*, 246 F.3d 1272, 1275 (9th Cir. 2001) ("[W]e should usually give words their plain, natural, ordinary and commonly understood meanings."). In fact, the CSPA is replete with cross-references, even in § 1151(f)(2), where there are no references to §1153(h)(1). *See* App. 174 (district court decision noting that the two provisions "do not cross reference each other. Yet these two provisions of the CSPA and many other provisions, are so filled with cross-references it makes one's head spin."). And § 1151(f)(2) does not so much as insinuate a meaning other than the chronological age; the word "age" in § 1151(f) is not modified one way or the other. Thus, the plain language of the statute does not dictate that § 1151(f)(2) incorporates the specific age calculations in § 1153(h)(1). On the contrary, the term should be

given its common, ordinary meaning—the actual, chronological age of the beneficiary.

Furthermore, the distinction between beneficiaries of U.S. citizen parents and lawful permanent resident parents is relevant because the INA has always distinguished between children of U.S. citizens and lawful permanent residents, and there is never a wait for a visa to become available for children of citizens but there is a (potentially lengthy) wait for children of lawful permanent residents—a fact the CSPA did not change. Furthermore, if Congress had intended the outcome that Plaintiffs posit, it could have added a cross-reference to 8 U.S.C. § 1153(h)(1), it could have selected as the relevant trigger "the age on the date on which the F2A petition was filed," or it could have specified any other age-reducing formula to apply for individuals seeking immediate relative visas. But Congress instead chose "the age of the alien on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2); *see Burrage v. United States*, 571 U.S. 204, 218 (2014) ("The role of this Court is to apply the statute as it is written—even if we think some other approach might accord with good policy.") (internal marks and citation omitted); *Cuellar de Osorio*, 573 U.S. at 67 n.13 ("conversion occurs (or not) upon the date of the relevant status change – and no other").

The separate nature of § 1153(h)(1) is further demonstrated by the entirety of that section. Specifically, 8 U.S.C. § 1153(h)(1)(A) requires that the beneficiary seek

to acquire lawful permanent resident status within one year of visa availability in order to take advantage of § 1153(h)'s age-calculation formula. But that one-year deadline makes little sense in the context of immediate relative visas, where Congress has never limited when an eligible individual can obtain a visa. Moreover, if Congress had intended to allow an F2A beneficiary to always retain his or her child status, it would not have created the exception in § 1151(f)(2) to use the age on the date of naturalization because § 1151(f) already freezes the age an F2A beneficiary at the date the visa petition was filed, thereby preserving the F2A beneficiary's ability to become an immediate relative upon naturalization of a parent.

Plaintiffs argue that this Court should adopt their preferred statutory interpretation, and note that two sister circuits have agreed with their position. Pl. Br. 12 (citing *Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018); *Cuthill v. Blinken*, 990 F.3d 272 (2d Cir. 2021)). However, this argument is premised upon the assertion that the entire CSPA was designed to lock a beneficiary's age at the § 1153(h)(1) calculation. Pl. Br. 14-15; *id.* at 2 (referring to the age calculation under § 1153(h)(1) as the "CSPA age"). The simple fact that § 1151(f)(2) contains a different age calculation undermines the position that the §1153(h)(1) age is always the operative age. *See* App. 177 (district court decision noting that the Ninth Circuit in *Tovar* and the Second Circuit in *Cuthill* did not properly accept the meaning of the simple

22

phrase "'using the age of the alien on the date of the parent's naturalization.'") (quoting 8 U.S.C. § 1151(f)(2)).

The *Tovar* court was strongly influenced by its view that a son or daughter should never be disadvantaged by the naturalization of a parent, calling such an effect "absurd." *Tovar*, 882 F.3d at 904; *see Cuthill*, 990 F.3d at 283–84. But absurd results do not follow from the plain and simple reading of this statute. "An absurd interpretation is one that 'defies rationality or renders the statute nonsensical and superfluous.'" *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (*quoting United States v. Moreno*, 727 F.3d 255, 259 (3d Cir. 2013)). "As long as Congress could have any conceivable justification for a result—even if the result carries negative consequences—that result cannot be absurd." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020); *see In re Visteon Corp.*, 612 F.3d 210, 234 (3d Cir. 2010) ("Virtually all laws would be absurd if judged by whether they accomplish a perfect solution to an underlying legislative concern."). Congress may have had a reason for not applying the §1153(h) age calculation to those in Jimenez's circumstances, for example doing so would disadvantage adult children who have their own minor children they seek to bring with them, which they could not do if treated as immediate relatives. Regardless, an amendment to a complex statute like the INA, having been the result of compromises of various political and fiscal objectives, need not perfectly harmonize across all provisions of

the INA. *Id.* Thus, "once Congress has created classifications within a ramified statutory scheme, it need not justify every difference in treatment between the two classes." *Id.*

In any event, *Tovar* and *Cuthill* are not binding on this Court and, in its de novo review, the Court should disagree with those courts' results-driven decisions cobbling together distinct statutory provisions to reach a preferred result. *See Tovar*, 882 F.3d at 899–900 (recognizing that one reading would provide the beneficiary an immediately available visa and the other, which the court did not adopt, would require the beneficiary to potentially wait decades for an available visa). In *Tovar*, the Ninth Circuit reasoned that the plain language of "§ 1151(f)(2), standing alone, does not say which age controls"—the beneficiary's actual age or the age calculation from the separate provision in § 1153(h)(1). 882 F.3d at 900. But as noted above, Congress did not need to add the word "chronological" to modify "age" in § 1151(f)(2). It should be considered that "age" has its ordinary meaning without a reference or cross-cite to the separate calculation in § 1153(h)(1). Indeed, while the Ninth Circuit was correct that § 1151(f)(2) need not be read "in isolation," the statute's explicit reference to the beneficiary's age at the time of naturalization—as opposed to the age calculation under § 1153(h) relating to the amount of time a visa petition was pending—demonstrates a Congressional intent to have a separate rule for the beneficiaries whose parent naturalized during the pendency of the visa

petitioning process. *Cf. Tovar*, 882 F.3d at 901 (asserting that a cross-reference is unnecessary when the provisions are "so clearly related and form a cohesive whole.").[5]

Similarly, the Second Circuit's reliance on the purpose of the CSPA is misplaced. *Cuthill*, 990 F.3d at 281. Notably, the Second Circuit focused on the age calculation in § 1153(h) subtracting the processing time, and noted another separate provision allowing certain beneficiaries to opt-out of the age calculation should it be more beneficial to them. 990 F.3d at 276–77 (discussing 8 U.S.C. § 1154(k)). That court then reasoned that because § 1151(f)(2) did not have an analogous provision allowing a beneficiary to lock-in a certain age, it must therefore have meant to incorporate that age calculation. *Cuthill*, 990 F.3d at 277, 280. The Second Circuit asserted that § 1151(f)(2) must include the age calculation from the separate § 1153(h) and not the neighboring § 1151(f)(1) (which no one contests refers to chronological age) simply because, prior to the naturalization of the parent, a § 1151(f)(2) beneficiary was similarly situated to a beneficiary subject to the § 1153(h) age calculation. 990 F.3d at 280. But this reasoning fails to account for

---

[5] Furthermore, the statutory analysis in *Tovar* is incorrect. Notably, the court erroneously stated that neither § 1153(h)(1) nor § 1151(f)(2) "limit the circumstances in which the reduced age is relevant." *Tovar*, 882 F.3d at 901. Indeed, § 1153(h)(1) does limit its application to aliens who seek to acquire lawful permanent resident status within one year of a visa becoming available. 8 U.S.C. § 1153(h)(1)(A).

the fact that visa eligibility is assessed at the time of adjudication and that § 1151(f) applies to beneficiaries of petitioners who are U.S. citizens, and § 1153(h) applies to beneficiaries of petitioners who are lawful permanent residents.

Moreover, while only the Second and Ninth circuits have been presented with this issue, several district courts and the Board of Immigration Appeals have reached a different (and the correct) conclusion: that the beneficiary's chronological age is controlling under § 1151(f)(2). *Da Silva v. Blinken*, No. 23-612154 (S.D. Fla. Jan. 16, 2024) (order granting motion to dismiss) (produced at App. 104–06); *Sciamarelli v. Swacina, et al.*, No. 1:15-cv-24288, 2016 WL 9444167, *5 (S.D. Fla. Sept. 19, 2016); *Matter of Zamora-Molina*, 25 I. & N. Dec. at 612. This Court should follow those decisions and conclude that the plain text of the statute clearly establishes that § 1151(f)(2) refers to chronological age.

Should this Court disagree that the plain text is unambiguous, it should conclude that the legislative history of the CSPA does not require the court to apply the age calculation from § 1153(h) to § 1151(f)(2). Admittedly, the legislative history of the CSPA includes a general desire to protect a minor child's status when the immigrant visa petition suffered from administrative delays. *See* 148 Cong. Rec. E1330 (daily ed. July 24, 2002) (ext. of remarks by Rep. Mink) (recognizing that "many children of U.S. citizens and legal permanent residents are penalized" under the INA because "children of legal permanent residents whose visa petitions are

reclassified when their parents become naturalized citizens face prolonged delays due to their reclassification. Enacting [the CSPA] makes sure that these children do not face such additional delays."); CSPA, Pub. L. 107-208, 116 Stat. 927 (Aug. 6, 2002) (preamble) (describing the purpose of the CSPA as "[t]o amend the Immigration and Nationality Act to determine whether an alien is a child, for purposes of classification as an immediate relative, based on the age of the alien on the date of the classification petition with respect to the alien is filed, and for other purposes"); *Cuthill* 990 F.3d at 282. Critically, however, the legislative history does not indicate that Congress's intent was to freeze all beneficiary ages at the same time, nor did Congress indicate an intent to freeze the age of the child of a lawful permanent resident for all future adjustment purposes. *See Cuellar de Osorio*, 573 U.S. at 52–53 (discussing the limited application of § 1153(h)(1)). Instead, the CSPA was a set of complex rules that had a more limited remedy to account for processing delays of the immigrant petition which resulted in unintended longer wait for adult children of citizens versus adult children of lawful permanent residents. *See id.*; *see also* H.R. Rep. No. 107-45 *2-3 (legislative history, noting that the CSPA was drafted to address "the predicament" of when a visa petition was filed before the beneficiary turned twenty-one, and where the government did not adjudicate the visa until after the beneficiary turned twenty-one and thus automatically converted the beneficiary from the immediate relative category to an F1 family-preference

category); 148 Cong. Rec. H4991 (daily ed. July 22, 2001) (statements by Rep. Sensenbrenner) (discussing the opt-out provision ultimately enacted under 8 U.S.C. § 1154(k)); 148 Cong. Rec. H2901 (daily ed. June 6, 2001) (statements by Rep. Sensenbrenner) (discussing the CSPA provisions accounting for delays in I-130 processing times). Thus, while it is possible that Congress may not have intended the result in this case, *see Tovar*, 882 F.3d at 904 (recognizing the government's argument that this result is "a Congressional oversight"), Congress clearly understood the complexity of the statute it created and its intent was not so certain as to undermine the plain language of § 1151(f)(2). *See* App. 177–78 (district court decision, noting that "the CSPA is filled with varied categories of petitioners and applicants who, depending on a variety of different circumstances, receive significantly different treatment."). Because the legislative history does not clearly establish that a beneficiary's age must always be subject to the calculation in § 1153(h)(1), the Court should resolve the case based on the plain language of the statute and determine that "age" in § 1151(f)(2) references the beneficiary's chronological age.

## CONCLUSION

For the foregoing reasons, this Court should determine that there is no final agency action to review in this case. Alternatively, the Court should conclude that 8 U.S.C. § 1151(f)(2) unambiguously refers to the beneficiary's biological age and,

consequently, Jimenez is properly categorized as an F1 beneficiary. Accordingly,

the Court should dismiss or deny the appeal.

Respectfully submitted,

LINDSAY M. VICK
Senior Litigation Counsel
Office of Immigration Litigation

s/Jessica A. Dawgert
JESSICA A. DAWGERT
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D. C. 20044
(202) 616-9428
Jessica.A.Dawgert@usdoj.gov

March 12, 2025          ATTORNEYS FOR DEFENDANTS-APPELLEES

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365, Times New Roman, 14-point type, and contains 6,609 words outside of the Tables of Contents and Authorities and Certificates excepted by the federal rule.  All required privacy redactions were made in compliance with 10th Cir. R. 25.5.  The electronic version was scanned with the CrowdStrike Falcon virus scanning program and is free of viruses.

s/Jessica A. Dawgert
JESSICA A. DAWGERT
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D. C. 20044
Telephone:  (202) 616-9428
Jessica.A.Dawgert@usdoj.gov

March 12, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court

for the United States Court of Appeals for the Tenth Circuit by using the appellate

CM/ECF system on March 12, 2025.  I certify that Plaintiffs-Appellants' counsel

(Mark Robert Barr) is a registered CM/ECF users and that service will be

accomplished by the appellate CM/ECF system.


s/Jessica A. Dawgert
JESSICA A. DAWGERT
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D. C. 20044
Telephone:  (202) 616-9428
Jessica.A.Dawgert@usdoj.gov